## THE ROBERT JENKINS.

(*District Court, W. D. Pennsylvania.* January 17, 1885.)

1. ADMIRALTY PRACTICE—VERBAL AGREEMENT TO DISCONTINUE—JURISDICTION.
   A verbal agreement between the parties, after libel in admiralty filed, for the settlement and discontinuance of the suit, about the terms of which, however, they soon differed, and which was not set up in the answer afterwards filed, cannot at final hearing, after full proofs taken, be insisted on as having ousted the jurisdiction of the court, even if originally such effect might have been given to it.

2. SAME—COSTS.
   Although on account of the voluntary reparation by the respondents for most of the libelant's damages from a collision, and for other reasons, the court inclined to deny him costs, yet, in view of the absolute denial of responsibility contained in the answer, *held*, that the respondents were justly chargeable with full costs, they having chosen to litigate that question unsuccessfully.

In Admiralty.

*Barton & Son,* for libelant.

*Knox & Reed,* for respondents.

ACHESON, J. I am not convinced that the injury to the libelant's flat-boat was by reason of unavoidable accident. If a wind-storm

prevailed, the Robert Jenkins, in the midst of it, voluntarily put herself in perilous proximity to the flat; and while the injury was not the result of willfulness or gross negligence, there was such a lack of due care as fairly made the tow-boat answerable for the collision. The owners of the Robert Jenkins, the respondents, raised the sunken flat, delivered its cargo of stone, and had the flat docked and repaired by Oswald Kellar, all at their expense. The flat was old and long used, and, it would seem, needed additional repairs to those thus made; but the evidence satisfies me that Kellar repaired all the damage to the flat which had been occasioned by the collision. The only remaining duty incumbent upon the respondents as respects the flat was to have it towed from Kellar's docks to the landing at which it it had been sunk; but, according to the clear weight of the evidence, the libelant dispensed with this, he directing the respondents to leave the flat at Kellar's for further repairs which he himself desired to have made. The libelant does, indeed, deny the genuineness of the written order of November 24, 1883; but it is incredible that Mr. Hoag should have forged the libelant's name. The charitable supposition is that the libelant's recollection is at fault. The testimony of Mr. Jenkins and Mr. Hoag is strongly confirmed by Kellar, who testifies: "He [the libelant] talked about having the flat put on the dock again, and the bottom calked all new and a plank or two put in. This was work he wished me to do for him."

The evidence, however, indicates that besides the injury to the flat the libelant sustained some other damages which, I think, may be justly fixed at $15. But the respondents contend that this suit is not open to further prosecution, because of an agreement for the settlement of the case entered into by the parties immediately after the libel was filed; the respondents asserting that by raising and repairing the flat and delivering its cargo they performed in the main what they agreed to do, and that they tendered performance of what remained to be done by them; and they maintain that the libelant's only remedy is upon the said agreement. But to this argument there are two answers: *First*, the agreement was verbal, and the parties soon differed (as they yet do) as to its terms; the libelant alleging that the respondents were to pay the fees of his counsel, which the respondents deny. Under the conflicting evidence, it is hard to decide which side is right. I think the solution which must be accepted is that the parties did not understand each other, and hence their minds never met. Then, in the *second* place, the respondents did not set up the agreement of settlement in their answer, although it was not filed until after this new dispute had arisen. Certainly, after proofs taken upon the whole case, it is too late for the respondents to insist at the final hearing that the agreement ousted the jurisdiction of the court, even if originally such effect could have been given to it.

I would incline to deny costs to the libelant save for the character of the answer, which denies *in toto* the responsibility of the Robert

Jenkins for the collision. As the respondents chose to litigate that question, and the proofs show them to be in the wrong, they cannot very well complain that they are adjudged to pay the costs. Let a decree in favor of the libelant be drawn for $15 and costs.