STANDARD OIL COMPANY v. PAUL A. DAY AND OTHERS.[1]

December 19, 1924.

No. 24,270.

**Surety on contractor's bond liable for debt of subcontractor.**

McGree, Moos & Company, entered into a contract with the state to furnish material and pave a highway. It furnished the usual bond. The Globe Indemnity Company, was the surety. The contractor then let the hauling of certain material to Day-DeVeau Motor Transportation Company, which, when it began its work, owed the plaintiff about $3,400 on account which was wholly disconnected from the work mentioned in the bond. In doing the work mentioned in the bond, plaintiff furnished to the subcontractor for use on, and which was used on, the highway construction work, gasolene, oils, etc., of the value and agreed price of $3,466.36. The contractor paid the subcontractor $41,801.77 in full for the hauling and it paid plaintiff $5,250 on account. Plaintiff knew that the money so received came from the original contractor on the work mentioned in the bond. Pursuant to an understanding between plaintiff and the subcontractor, this money was applied first to extinguishment of the old unsecured debt and thereafter upon said hauling, leaving a balance of about $1,600 unpaid and due, which plaintiff now seeks to recover from the original contractor and the surety. *Held,*

(1) That the moneys so unconditionally paid to the subcontractor became its money and it could use it as its own, and the surety cannot direct application of payments, and that the plaintiff may recover the balance of its account from the original contractor and the surety. Jefferson v. Church of St. Matthew, 41 Minn. 392, followed.

(2) That chapter 105, L. 1925, does not modify this rule of law nor reflect any intent of the legislature to adopt as the public policy of the state any contrary rule.

Action in the district court for Ramsey county to recover $1,600.48 for materials furnished on a public contractor's bond. The case was tried before Sanborn, J., who ordered judgment in favor of plaintiff. From the judgment, defendant contractor and surety appealed. Affirmed.

*Davis, Severance & Morgan,* for appellants.

*O'Brien, Horn & Stringer,* for respondent.

[1]Reported in 201 N. W. 410.

WILSON, C. J.

Appeal from a judgment entered in favor of plaintiff.

McGree, Moos & Company entered into a contract with the state to furnish material and pave a portion of a certain highway. The contractor furnished the usual public contractor's bond as provided by section 8245, G. S. 1913. The Globe Indemnity Company was the surety. The contractor then let the hauling of certain material to Day-DeVeau Motor Transportation Company which, when it began its work, owed the plaintiff about $3,400 on account. This indebtedness was not secured and did not arise out of the work mentioned in the bond. But in doing the hauling, in the project covered by the bond, plaintiff furnished to the Day-DeVeau Company, hereinafter mentioned as "purchaser," for use on and which was used on this highway construction work, gasolene, oils, etc., of the value and agreed purchase price of $3,466.36. The purchaser, having received from the original contractor in full the sum of $41,801.77 for the hauling, paid to plaintiff $5,250. Plaintiff knew that the purchaser had received the money from the original contractor for the particular hauling. Pursuant to an understanding between plaintiff and the purchaser this money was applied, first, to extinguishment of the old unsecured debt, and thereafter upon said hauling, leaving a balance of about $1,600 unpaid and due which plaintiff now seeks to recover from the original contractor and the surety company. Upon such facts does liability exist?

The agreement of the purchaser that the payments should be so applied did not modify or alter plaintiff's legal rights in the absence of such an agreement. Such an agreement merely meant the consent to plaintiff doing that which it could legally do without such consent. Sheppard v. Steele, 43 N. Y. 52, 3 Am. Rep. 660. It, of course, committed the purchaser to the fact. The original contractor and the surety failed to take any steps to protect themselves against the condition that resulted. When this money was paid to the purchaser, it was paid unconditionally. When the purchaser received the money, it was its money, and of course it was at liberty to use it as its own. And, as this court said in Jefferson v. Church of St. Matthew, 41 Minn. 392, 43 N. W. 74, "in the absence of any

express stipulation or arrangement between the parties interested in respect to its application, communicated to the plaintiffs at the time, the latter were at liberty to apply it as they did."

In Jefferson v. Church of St. Matthew, supra, the facts were these:

"At the time when the church owed the contractors $657 it paid them $600 by a check payable to their order. The contractors took this check to Jefferson & Kasson, properly indorsed, and told them to apply it on their account generally, which amounted to $1,700 outside of and prior to the account of material furnished for the church. Jefferson & Kasson knew that this check was paid by the church and they had up to that time furnished the lumber for it to the extent of $400. They applied the entire $600 to the prior account."

Upon these facts this court said:

"Upon the facts as presented by the record we are unable to say that the plaintiffs were not entitled to apply the $600 paid to them by the contractors as directed by the latter, on their account generally. It must, in support of the findings, be deemed to have been so paid and applied. The debt was paid to the contractors on their contract with the church, while they owed the plaintiffs but $400 When this money was so received by them it was their money and they were at liberty to use it as their own, and apply it in payment of such debts as they chose; and so also, in the absence of any express stipulation or arrangement between the parties interested in respect to its application, communicated to the plaintiffs at the time, the latter were at liberty to apply it as they did. Being paid on account generally, it would be legally applied upon the oldest items of account, and it does not appear that any of it would be applicable to the particular account for lumber furnished for this church building. * * * To protect themselves, the officers of the defendant should have taken the same precautions in the case of the first payment which they did in respect to the later payments."

The Jefferson case would ordinarily be quite sufficient to control the present controversy. But its doctrine is now attacked as un-

sound, and it has been suggested that the rule which requires, under such circumstances as exist here, that the materialman shall first apply the money to the indebtedness which represents the material furnished for the particular job, is a better rule of business conduct than the rule adopted by this court in the Jefferson case.

The principle announced in the Jefferson case was apparently approved in the following cases: Miller v. Shepard, 50 Minn. 268, 52 N. W. 894; Board of Co. Commrs. v. Citizens Bank, 67 Minn. 236, 69 N. W. 912; American Bridge Co. v. Honstain, 113 Minn. 16, 128 N. W. 1014; Villaume Box & Lumber Co. v. Condon, 146 Minn. 156, 178 N. W. 492. In support of the more general proposition that, in the absence of expressed application, payments will be applied on the basis of priority, and the oldest debit item will be first paid, i. e., the law applies payments made on the first unpaid debit item, the Jefferson case was again cited in L. J. Mueller Furnace Co. v. Burkhart, 149 Minn. 68, 182 N. W. 909. A general discussion of application of payments is found in note to McWhorter v. Bluthenthal, 96 Am. St. 44. Also in note to Sioux City Foundry & Mnfg. Co. v. Merten, L. R. A. 1916D, 1254.

Appellant refers to the case of Merchants Ins. Co. v. Herber, 68 Minn. 420, 71 N. W. 624, which is easily distinguishable from the case at bar. Herber was agent for the Merchants Insurance Company with authority to write insurance and collect all premiums for his company. He furnished a bond for the faithful discharge of his duties as such agent, which included the prompt remittance of such collections. The agency began May 1, 1893, and was terminated November 1, 1894, at which time he was indebted to his company for premiums in the sum of $891.91. Action was brought against him and his sureties on his bond. Prior to May 1, 1893, Herber and another had been agents for the company, and on that date he was indebted to the company on account of policies previously issued and he sent checks during his individual agency as set forth in 68 Minn. on page 423. When his agency was terminated he owed the $891.91 for the month of October. All the money that he paid to the company was received by him in payment of premiums covered by the bond. One of his sureties on the bond claimed that

the creditor and his principal, as against him, could not apply money, collected as premiums due for policies issued by him under the appointment for which the bond was given to the payment of the prior indebtedness. If the application of payments made by the parties was binding on the surety, he was liable on the bond for the amount claimed, but if the money was applied on policies issued after May 1, 1893, there was no shortage. It was held that, since the money paid to the company was the very money for the collection and payment of which he was obligated to the creditor, the surety was not bound by the application and that the surety under such circumstances was equitably entitled to have the moneys applied to the payment of the debt for which he was surety. The money here involved was owned by the company. Herber merely turned their money over to the owner who in good conscience must recognize that it was by virtue of the suretyship impressed with a character that would not permit it to be diverted from a proper credit in favor of the surety who had agreed to account therefor.

The Standard Oil Company did not own the funds received from its purchaser until it received the same in payment. The purchaser was the absolute owner before it paid the same to plaintiff. An important distinction. This court said in American Bridge Co. v. Honstain, 113 Minn. on page 20, 128 N. W. 1014, that the Herber case did not overrule Jefferson v. Church of St. Matthew, supra, nor Miller v. Shepard, supra.

A surety may direct the application of payments between the principal and creditor only when the funds are not owned by the debtor and are subject to some equity in favor of the surety. Merchants Ins. Co. v. Herber, supra; Ganley v. City of Pipestone, 154 Minn. 193, 191 N. W. 738.

The position of appellant assumes that a surety has a right that the earnings of the contractor under his contract shall be applied upon the labor and material going into the structure when no such agreement is stated in the bond or provided by statute. Our public contractor's bond contemplates that the contractor will receive and disburse his money as suits his convenience. The original contractor in this instance could have protected itself by requiring a bond

from the subcontractor. It may have done so. Where the bond is furnished the surety must recognize the possible occurrence of what here did occur as one of the perils of its business. In other words one who becomes surety takes the risk that honest payment of unsecured debts may leave a deficiency which the surety must make good.

The general rule as to the application of payments under the circumstances here involved as announced by this court, and as above stated, finds support in other states: W. H. Pipkorn Co. v. Ev. L. St. Jacobi Soc. 144 Wis. 501, 129 N. W. 516; People v. Powers, 108 Mich. 339, 66 N. W. 215; Mack v. Colleran, 136 N. Y. 617, 32 N. E. 604; Bankers Surety Co. v. Maxwell, 22 F. 797, 138 C. C. A. 345; Crane Co. v. U. S. F. & G. Co. 74 Wash. 91, 132 Pac. 872.

There are authorities that do not support our holding. Sioux City Foundry & Mnfg. Co. v. Merten, 174 Iowa, 332, 156 N. W. 367, L. R. A. 1916D, 1247; Crane Co. v. Pacific Heat & Power Co. 36 Wash. 95, 78 Pac. 460; Columbia Digger Co. v. Sparks, 227 F. 780, 142 C. C. A. 304; U. S. v. Am. Bonding & T. Co. (C. C.) 89 F. 925; Sturtevant Co. v. Fidelity & Deposit Co. 92 Wash. 52, 158 Pac. 740, L. R. A. 1917C, 630. In re Crane & Co. v. Pacific Heat & Power Co. supra, the complaint alleges the acts done to defraud the plaintiff. That may distinguish it from the later case of Crane Co. v. U. S. F. & G. Co supra, and account for no reference to it in the later case.

The authorities that hold contrary to our view do so upon the theory that such moneys are impressed with an equity in favor of the surety that entitles it to have the money applied in payment of liabilities incurred by the contractor under the contract. If such an equity exists as against a creditor, who has a current account arising out of the contract and also an account incident to some other and prior transaction that prevents the creditor and his debtor agreeing that moneys which the creditor has received from payments under a particular contract shall be applied upon such prior indebtedness, it would seem that, upon the same logic and reason, if this same creditor's claim consisted exclusively of the old account, he could not safely accept such moneys, with knowledge of their

source, upon the old account. The money should still be subject to such equity in favor of the surety, and if the rule is followed to its logical conclusion the surety in case of loss could recover the payment from the general creditor. This leads to an instability in commercial business that does not have our approval. The creditor should not, in the collection of his money, be burdened with the responsibility of having to know the status of his debtor's accounts nor the status of the obligation of the surety of the debtor.

The surety in modern business should be, and usually is, quite able to care for itself. It selects those for whom it becomes surety. Most contractors and subcontractors must necessarily use some of their money that they receive in payment of obligations not incurred in the particular contract from which their money is received. When they receive their money unconditionally, it is their own and they may do with it as they please. If a creditor must stop, before he accepts payments from his debtor, and make the impertinent inquiry as to his standing with his surety, the unsatisfactory results are obvious. Such a position not only gives undue regard to the surety, but is in utter disregard of the right to make private contracts and the obligation thereof. Suppose his tailor is delivering a suit of clothes which he has made for the subcontractor, and the latter tenders payment in funds which the tailor knows came from the work covered by a surety bond, must the tailor refuse it, or take it clothed with an equity that, perchance, later permits the surety to take it away from him? A surety is not entitled to such judicial mercies. The tailor has business perils of his own. The business of sureties is inherently one of constant peril and their imperative watchfulness for their general protection makes it less burdensome for them to guard against the emergency here under consideration and our view tends more to the stability of ordinary business.

We think our previous holdings on this subject are sound and that we have adopted the better rule. We hold that such funds are not under such circumstances impressed with an equity in favor of the surety. In the consideration of this matter we have considered the original contractor in the same situation as his

surety for the purpose of this case. The claim of appellant is well answered by the court in People v. Powers, 108 Mich. 339, 66 N. W. 215, wherein the court says:

"Again to do so is to say that one who furnishes labor and material cannot receive payment for former labor or material furnished elsewhere, although the contract by which that sought to be recovered for * * * expressly provided for such payment. It assumes that the sureties have a right that the earnings of the contractor under his contract shall be applied upon the labor and material going into the building, when no such agreement is stated in the bond or provided by statute. If it were the law, it would seem to follow that a contract to build a house, or to render services as a subcontractor, in consideration of an existing indebtedness, could not be enforced against sureties who had signed a bond that the contractor or subcontractor should fulfill his contract. This bond did not, in terms, provide that the contractor should apply his earnings to pay the laborers or material men, and the statute does not provide for such a bond. It undertook that the contractor should perform his personal obligations in his own way. It contemplated that he would receive and disburse his money as should suit his convenience. This contention depends upon an alleged equity that the money earned shall be applied only upon the account for materials furnished for the particular job. It is not supported by the letter of the bond or statute, and we think it is not supported by authority."

It is claimed that, since we stated in Fay v. Bankers Surety Co. 125 Minn. 211, 215, 146 N. W. 359, Ann. Cas. 1915C, 688, the statutes relating to bonds of public contractors are largely substituted for the mechanics' lien laws which are construed liberally, that a liberal construction should be applied to the statute relating to bonds of public contractors. It is said that the lien law is based upon the theory that the owner of real property, by contracting for improvements, thereby consents that the property shall stand as security for the payment of claims for labor and materials con-

tributed to such improvement. Upon these statements as a basis it is asserted that the legislature by enactment of chapter 105, p. 138, L. 1915, in effect adopted as the public policy of the state the rule that the proceeds of any payment made to any contractor or subcontractor on any improvement to real estate within the meaning of section 7020, G. S. 1913, shall be first applied by such contractor or subcontractor in payment of those things covered by the public contractor's bond, section 8245, G. S. 1913, until fully paid. This contention cannot be accepted. It is unsound. This statute is a criminal statute making certain acts larceny. The intent of the law, as shown by its language, was to make certain acts criminal when done "with intent to defraud." To adopt the views urged by appellant would mean that this law operates to impress a trust upon such moneys as here involved and we know of no reason to prompt the legislature to desire to change the doctrine of the Jefferson case. At any rate the legislature has failed to manifest any such intent. The inquiry is answered in the negative.

Affirmed.

Mr. Justice Stone took no part.