# CLARA L. RADICHEL AND ANOTHER v. FEDERAL SURETY COMPANY.[1]

January 28, 1927.

No. 25,584.

**What part of price of drain tile bought and laid along ditch before date of bond, and what part of price of tile delivered after date of bond, was secured by contractor's surety bond.**

1. A public contractor's bond provided that the surety should not be responsible for claims against the principal for labor and material existing prior to the date of the bond. The principal purchased tile from the decedent under a written contract providing for the payment of 85 per cent of the purchase price when the tile was laid along the line of a public ditch which the principal had undertaken to construct, and 15 per cent upon the completion and acceptance of the ditch by the proper authorities. Under these circumstances it is *held* that plaintiffs' claim for 85 per cent of the unpaid portion of the purchase price of the tile laid alongside the ditch prior to the date of the bond was not secured thereby, but that the payment of 15 per cent of such unpaid purchase price and the total price of all tile delivered after the date of the bond were secured.

**Definition of "claim."**

2. The word "claim" is a synonym of "moneyed demand." As generally employed it comprehends every species of legal demand. To constitute a claim the demand need not be due.

**Surety of public contractor did not have right to direct how partial payment to him should be applied.**

3. A payment made on a single account consisting of several items, no specific application of the payment having been made, will be applied according to priority of time. The fact that, to the knowledge of the creditor, the money with which the payment was made was received by the debtor for work done in the performance of the contract after the bond securing payment of bills for labor and materials had taken effect, did not give the surety the right to direct how the payment should be applied.

[1]Reported in 212 N. W. 171.

Claim, 11 C. J. p. 817 n. 76; p. 818 n. 85, 86.
Payment, 30 Cyc. p. 1244 n. 56; p. 1251 n. 94; p. 1252 n. 95.
Principal and Surety, 32 Cyc. p. 114 n. 48 New; p. 170 n. 14; p. 172 n. 27.

See notes in 41 A. L. R. 1297; 21 R. C. L. 88, 107; 3 R. C. L. Supp. 1134; 4 R. C. L. Supp. 1404; 5 R. C. L. Supp. 1143; 6 R. C. L. Supp. 1253.

Clara L. Radichel and the Citizens Loan & Trust Company, executors of the estate of Daniel W. Radichel, deceased, substituted as plaintiffs for said decedent, appealed from an order of the district court for Blue Earth county, Comstock, J., denying their motion for a new trial. Reversed.

*C. J. Laurisch* and *S. B. Wilson, Jr.,* for appellants.

*Ware & Melrin,* for respondent.

LEES, C.

This action was brought against the surety on a public contractor's bond to recover the unpaid balance of the purchase price of a quantity of drain tile furnished to the contractors. While the action was pending in the court below, D. W. Radichel died, and Clara L. Radichel and Citizens Loan & Trust Company, his executors, were substituted as plaintiffs. The court found in plaintiffs' favor for an amount less than they sought to recover, and they appealed from an order denying a new trial.

In December, 1919, the contractors undertook to construct Consolidated Ditch No. 1 in Jackson and Cottonwood counties and gave the bond required by G. S. 1923, § 9700. The surety was the Lion Bonding Company. Thereafter the company withdrew from this state and the contractors furnished an additional bond with the defendant Federal Surety Company as surety. The bond contains this provision:

"One of the conditions of this bond is that this surety * * * shall not be responsible for claims in connection with this contract for labor and material existing prior to the date of the issuance of this bond."

The date of the bond is August 23, 1921.

The controversy centers about two principal points: (1) What portion of the claim against the contractors was in existence on August 23, 1921? (2) How should payments be applied which were made after August 23, 1921?

The tile was furnished under a written contract of sale in which D. W. Radichel was named as the seller and the ditch contractors as buyers. The contract provided that deliveries should be made at Wilder in this state; that the tile should be subject to inspection by the engineer in charge of the ditch; that rejected tile should be credited to the contractors; and that payments should be made in proportion to the engineer's estimates received by the contractors within five days after the date of the estimates and as follows:

"85% when material is laid along the line of ditch —% when material is laid in ditch and 15% upon completion and acceptance of ditch by the proper authorities. It is agreed that time of final delivery and final payment shall be governed by the date designated for completion of ditch set forth in original contract for construction of said Ditch No. ——."

County warrants were issued from time to time for the amount of the monthly estimates which the contractors received while the work was in progress. The estimates were given for the purpose of enabling the contractors to obtain 85 per cent of the value of the tile placed alongside but not laid in the ditch, and were in the nature of advance payments from the counties.

Plaintiffs contend that the unpaid portion of the purchase price of all tile which had been delivered but not laid in the ditch and accepted prior to August 23, 1921, is a claim which was not in existence on that date.

On the other hand it is argued that the property in the tile passed to the contractors upon delivery at Wilder and that they were bound to pay at least 85 per cent of the price as soon as the tile was laid along the line of the ditch and the estimates were delivered to them, and to that extent plaintiffs' claim for tile delivered prior to August 23 was in existence when the bond was given.

The word "claim" is defined as a right to demand money. It is a synonym of moneyed demand. The demand need not be past due. A debt not yet due is a claim. Hobbs v. McLean, 117 U. S. 567, 6 Sup. Ct. 870, 29 L. ed. 940; McDowell v. Brantley, 80 Ala. 173; Chestnut St. Tr. & Sav. F. Co.'s Assigned Est. 217 Pa. St. 151, 66 Atl. 332, 118 Am. St. 909; Words & Phrases (1st ser.) pp. 1208-1209 (2d ser.) p. 720. The word as generally employed has a broad and comprehensive meaning, embracing every species of legal demand. Knutsen v. Krook, 111 Minn. 352, 127 N. W. 11, 20 Ann. Cas. 852. As used in the defendant's bond we think the word embraced the legal obligation of the contractors to pay for the tile according to the terms of their contract and that 85 per cent of the unpaid purchase price of tile laid along the line of the ditch prior to August 23 was a claim in existence on that day.

The right to demand the balance of the purchase price was contingent upon the completion and acceptance of the ditch, and plaintiffs' claim therefor did not come into existence until after August 23. Under their contract with the counties, the contractors had no right to demand final payment until their work had been completed, inspected and approved by the engineer and the judge of the district court. By the terms of their contract with decedent, his right to demand 15 per cent of the contract price was dependent on the contractors' satisfactory performance of their contract with the counties. The two contracts should be read together.

The trial court held that defendant's liability was limited to the unpaid portion of the purchase price of the tile furnished after August 23. This was erroneous. The measure of plaintiffs' claim under the bond is 15 per cent of the unpaid portion of the purchase price of the tile furnished prior to August 23, plus the unpaid portion of the total price of tile furnished thereafter.

2. Since there must be a new trial, it is proper to indicate our views upon the second branch of the case. The court found that on October 5, 1921, the contractors made a payment to decedent of $2,000, and on February 3, 1922, another of $1,000, to be applied on the portion of the account representing charges made after August

23, and reduced the amount of the recovery from defendant accordingly.

Decedent had a running account with the contractors. It extended over a period of time antecedent and subsequent to August 23, 1921. In the aggregate the debit items amount to over $27,000 and the credits to $14,530.89. The two payments in question were credited generally on the account. We have searched the record in vain for any evidence tending to show that the contractors directed decedent to apply these payments in any particular manner or that decedent made any specific application of them.

It is an established principle of law that, where there is a single account consisting of several items and no specific application of a payment is made, the payment will be applied according to priority of time, that is, the first item on the debit side of the account is discharged or reduced by the first item on the credit side. L. J. Mueller Furnace Co. v. Burkhart, 149 Minn. 68, 182 N. W. 909; Standard Oil Co. v. Day, 161 Minn: 281, 201 N. W. 410, 41 A. L. R. 1291. But it is contended that there is an exception to the rule in favor of a surety for the debtor if the money with which the payment was made was obtained on a contract secured by the bond and the creditor had knowledge of that fact.

It is also contended that, where successive bonds are given to secure the performance of a contract, payments made by the principal when the second bond is effective should be applied to reduce the liability of the surety on that bond. Upon these grounds an attempt is made to distinguish this case from Standard Oil Co. v. Day, supra.

The controversy here is not between the sureties on the two bonds but between the creditor of the principal in both bonds and the surety on the second bond. The money received from the counties was paid to the contractors unconditionally. They could use it as their own. The defendant had no right to direct how it should be applied or to whom it should be paid. We think Standard Oil Co. v. Day is controlling as to this point.

What we have said in reference to the application of payments is based wholly on the present record. If on a new trial the evidence

is materially different, the trial court will be at liberty to make such findings as may be warranted by the evidence and by the legal principles above set forth.

There should be a new trial of all the issues and the case is remanded for that purpose.

The Chief Justice took no part.