CLARA L. RADICHEL AND ANOTHER v. FEDERAL SURETY
COMPANY.
PAUL S. REDDING AND ANOTHER, INTERVENERS.[1]

July 19, 1929.

No. 27,400.

*Ware & Melrin,* for appellant.
*S. B. Wilson, Jr.* for respondents.

HILTON, J.

Appeal by defendant from an order denying its motion for a new trial.

Action by plaintiff Daniel W. Radichel, doing business as the North Star Concrete Company (for whom, at his death, his co-executors were substituted) to recover on a public contractor's bond on which defendant was a surety. The case was tried to the court without a jury, the plaintiffs securing an order for judgment on November 1, 1928, in the sum of $11,436.62 with interest at six per cent per annum thereafter and for costs and disbursements.

Redding & Smaage, contractors (interveners here) entered into a contract on or about December 15, 1919, with Jackson and Cottonwood counties for the construction of consolidated ditch No. 1, and

[1]Reported in 226 N. W. 473.

to secure the faithful performance of that contract and in compliance with the statute of the state they furnished the usual public contractor's bond required in drainage proceedings, which bond was executed by the Lion Bonding & Surety Company. On December 22, 1919, plaintiff made a written contract with said Redding & Smaage to furnish them the necessary concrete drain tile for said drainage project for $30,700. Among other things this contract contained the following provisions:

"Terms: Payments for deliveries of above mentioned materials shall be made in proportion to the estimates received from the counties of Jackson and Cottonwood and within five days from the date said estimates are received by the purchaser, as follows, 85% when material is laid along the line of ditch .... per cent when material is laid in ditch and 15% upon completion and acceptance of ditch by the proper authorities. It is agreed that time of final delivery and final payment shall be governed by the date designated for completion of ditch set forth in original contract for construction of said Ditch No...... The purchaser agrees to pay all freight charges accruing on shipments made on this contract, and said payments shall be credited to the account of the purchaser and deducted from final payment due on this contract.  *   *   *

"It is also agreed that the North Star Concrete Co. shall not be required to credit tile broken by careless handling or hauling and all breakage occurring during shipment shall be reported to the freight agent at point of delivery and such breakage noted on freight bill signed by the said agent and the amount of said breakage will then be credited to the account of the purchaser."

Due to the discontinuance from business in this state of the Lion Bonding & Surety Company, the drainage project having progressed until August 23, 1921, an additional statutory bond in the sum of $30,000 was executed by defendant. This last bond also contained the following:

"One of the conditions of this bond is that this surety, namely, the Federal Surety Company,  *   *   *  shall not be responsible

for claims in connection with this contract for labor and material existing prior to the date [August 23, 1921] of the issuance of this bond."

Consolidated ditch No. 1 was completed and accepted January 12, 1923.

The court found that interveners became indebted to plaintiffs in the sum of $27,300, the contract price and reasonable value of the tile furnished for ditch No. 1; that $21,270.30 worth thereof was delivered on the line of the ditch prior to August 1, 1921; and, under the conditions of the bond, 85 per cent thereof was a "claim" in existence on August 23, 1921, for which defendant is not liable; but that the payment of the other 15 per cent ($3,190.54) was dependent upon the contractor's satisfactory performance of the contract and did not come into existence until such full performance, to-wit, on January 12, 1923, and hence was not excluded by the language of the bond hereinbefore quoted; that the defendant is indebted to plaintiffs, because of said 15 per cent phrase as used in said contract, in the sum of $3,190.54 with interest, making a total of $4,317.28; that subsequent to August 1, 1921, and prior to April 8, 1922, plaintiff delivered to interveners tile of the value of $6,029.70; that included in said tile were 14 carloads shipped between August 2 and August 22, inclusive, aggregating in value $2,143.18, of which eight cars were not strung along the line of ditch on or prior to August 23, and six cars, aggregating in value $912.24, were strung along the line of the ditch prior to that date and for which defendant cannot be charged; that on the latter named cars $142.57 in freight was paid and $1.87 for breakage, leaving $767.93 for which defendant is entitled to credit as against said $6,029.70, leaving a balance of $5,261.77 for which defendant was responsible, with interest beginning January 12, 1923, making a total of $7,119.34.

Certain freight was paid by interveners, and they are allowed for certain breakage. The findings relative to credits to which interveners are entitled and which do not inure to the benefit of defendant and also relative to the full amount for which interveners are

liable over and above the liability chargeable to defendant are not necessary for consideration in this opinion.

Interveners also had a contract with Jackson county for county ditch No. 78. Plaintiff furnished the tile for this contract. The account for the tile for each ditch was kept separately on plaintiff's books. The evidence warrants the finding that a $5,000 payment was made by interveners to plaintiff under circumstances which gave the plaintiff the right to apply the same as he chose and that it was applied upon the ditch No. 78 account and not on the ditch No. 1 account; that it was at all times the intention of plaintiff to apply said payment upon ditch No. 78 account and not on the one here involved; that a bookkeeper in plaintiff's office erroneously entered it as a credit on the former account; that about three months later this erroneous credit was noticed and corrected with the joint knowledge and consent of plaintiff and interveners.

Defendant cites many authorities having to do with the proposition that a credit once given on an account toward the discharge of a particular claim cannot afterwards be applied to another account to the prejudice of third persons without their consent. Under proper circumstances this rule is correct. Here however it is not applicable for the reason that the credit was never intentionally or properly made on the ditch No. 1 account. Defendant had no right to control the account upon which this payment should be credited. In the first instance, the interveners could designate the account upon which the credit should be made. In the absence of such designation, plaintiff could apply it as it desired. Here it eventually appeared upon plaintiff's books as was the intention of both debtor and creditor. Defendant had no right to direct how it should be applied or to whom it should be paid. Standard Oil Co. v. Day, 161 Minn. 281, 201 N. W. 410, 41 A. L. R. 1291.

The instant case was before this court and is reported in 170 Minn. 92, 212 N. W. 171. In that decision, the court made the statement [p. 95]:

"The measure of plaintiffs' claim under the bond is 15 per cent of the unpaid portion of the purchase price of the tile furnished

prior to August 23, plus the unpaid portion of the total price of tile furnished thereafter."

This statement, in so far as the first portion thereof is concerned, was undoubtedly inadvertently made; it was the intention to say that the measure of plaintiffs' claim under the bond in that regard was the unpaid portion of the 15 per cent of the purchase price. Under the contract the purchase price of the tile delivered prior to August 1, 1921, for which the first bond was holden, was $21,270.30, 85 per cent of which was a "claim" in existence at the time defendant's liability became operative. The 15 per cent ($3,190.54) retained could not and did not become a "claim" until the ditch was completed and accepted January 12, 1923, nor was it paid until then. No reason exists for taking only 15 per cent of this 15 per cent. We agree with the conclusion reached by the trial court.

We have carefully considered the record in this case and the points raised, both in briefs and oral argument. We are of the opinion that the findings are in accord with the evidence and that the order appealed from should be affirmed.

Affirmed.

WILSON, C. J. took no part.