# COUNTY OF MARSHALL v. FREDERIK BAKKE AND OTHERS.[1]

## No. 27,967.

### December 12, 1930.

[1]Reported in 234 N. W. 1.

*Julius J. Olson,* for appellant Bakke.

*Daniel F. Foley,* for appellants Fidelity & Deposit Company of Maryland and National Surety Company.

*Cobb, Hoke, Benson, Krause & Faegre* and *L. M. Staples,* for appellant Aetna Casualty & Surety Company.

*W. O. Braggans,* County Attorney, for respondent.

HOLT, J.

Frederik Bakke, the county treasurer of Marshall county, and the sureties on his official bond appeal from the order denying a new trial, findings of fact and conclusions of law having been in favor of plaintiff.

Upon taking his office as county treasurer in January, 1923, defendant Bakke gave his official bonds to the county with the other defendants as sureties. He had for many years previously served as county treasurer of Marshall county. Pursuant to G. S. 1923 (1 Mason, 1927) § 846, and the sections directly following, the board of auditors in January, 1925, designated the First National Bank of Warren and the Warren National Bank depositories, and each of said banks executed depository bonds with personal sureties, the former in the penal sum of $100,000 and the latter in the penal sum of $90,000. Both bonds and sureties were duly approved by the board of county commissioners. In virtue of these bonds the treasurer and the sureties on his official bond were exempted from responsibility or liability for loss of county funds thereafter deposited in the banks up to one-half of the amount of the penal sum named in the bonds (§ 856).

There was another depository bank at Warren, the county seat, and quite a number of depository banks in the smaller hamlets of

the county. When the personal taxes in February and the real estate taxes in May and October were paid, the authorized depository banks could not lawfully absorb all of the county funds, and overdeposits for a few weeks resulted. Particularly was that true in regard to the three banks at Warren through which distribution was made to the outside depository banks and through which checks drawn by the treasurer upon county funds were "cleared." On June 10, 1925, there were funds of the county to the amount of $113,323.37 in the First National Bank, but no more than $34,184.12 remained in that bank when it was closed by the comptroller on October 3, 1925. In the Warren National Bank there were on June 10, 1925, funds in the amount of $96,603.29; and on November 17, 1925, when that bank was closed by the comptroller, $29,475.74. In the view we take of the case it will not be necessary to refer at all to the Warren National Bank, for if Bakke cannot be held liable for the funds on deposit in the First National Bank when it closed its doors he cannot for those in the Warren National Bank.

There are two features stressed very much by the county as being determinative in its favor with relation to the First National Bank not found in respect to the other bank. Bakke, since 1922, owned five shares of stock in the First National Bank; and also, he admitted he knew that bank in early June, 1925, desired that the checks or withdrawals be not "bulky." As stated, Bakke became the owner of five shares of stock in the First National Bank in 1922 and remained such until the bank closed. The respondent contends this prevented the bank from becoming a legal or de jure depository; for it is said G. S. 1923 (1 Mason, 1927) § 990, prohibited the bank from becoming a depository of county funds since the county treasurer was a stockholder and guilty of a gross misdemeanor thereunder if he deposited any money of the county therein. The section reads:

"No county official, or deputy or clerk of such official, shall be directly or indirectly interested in any contract, work, labor, or business to which the county is a party, or in which it is or may be interested, or in the furnishing of any article to, or the purchase or

sale of any property, real or personal, by, the county, or of which the consideration, price, or expense is payable from the county treasury. Any violation of the provisions of this section shall be a gross misdemeanor."

It seems to us that this statute must be applied so as not to lead to absurdities and permit persons to be penalized for acts of others with which they had no connection whatever. Under the statute the county treasurer has no voice in designating county depository banks. That is done by the board of auditors consisting of the chairman of the county board, the county auditor, and the clerk of the district court. G. S. 1923 (1 Mason, 1927) §§ 844, 846. Nor has he anything to do with the approval of the depository bond and sureties thereon. That is the duty of the county board (§ 849). It may be noted that the law contemplates that stockholders of depository banks may become sureties on its bond if the county board is satisfied that the failure of the bank would not affect their responsibility (§ 850). Could the county treasurer have become convicted of a gross misdemeanor because the First National Bank was designated a depository of county funds or upon proof that he deposited county funds therein after the depository bond had been approved by the county board? If that question is answered in the affirmative, it must also be held that had the county attorney, register of deeds, or any clerk of either owned a share of stock in the First National Bank, such official or clerk would also be guilty of a gross misdemeanor and the bank would not be a de jure or lawful depository. An application of the statute in this manner would lead to results which no sane legislator could have intended. It seems to us that if none of the persons who took any part either in the designation of this bank as a depository or in the approval of its depository bond owned any share of the bank's stock or had any voice in its management, the bank became a legal or de jure depository and in such case the treasurer and the sureties on his official bond are exempted from liability for county funds therein deposited and lost because of the bank's insolvency. The bank having become a legal depository, the treasurer was in duty bound to

deposit county funds therein the same as in the other designated depository banks. All funds of the county must be so deposited.

One of the objects of the law is that the county may receive the interest which depository banks agree to pay on the balances on hand. There is no claim in this case that Bakke favored the First National Bank more than either of the other two depository banks at the county seat, except perhaps that the others were drawn on more between June and October 1, 1925. We agree with respondent that the amount of interest of the county official in a contract is immaterial and also that the interest of a stockholder is no different so far as this statute is concerned from that of an officer. Respondent particularly relies on Hardy v. City of Gainesville, 121 Ga. 327, 48 S. E. 921; Ferle v. City of Lansing, 189 Mich. 501, 155 N. W. 591, L. R. A. 1917C, 1096; Edward E. Gillen Co. v. City of Milwaukee, 174 Wis. 362, 183 N. W. 679. The first and the last of these three cases are not in point because the official interested participated in the making of the contract. The Michigan case is authority for respondent. The charter provision of the city there involved read [189 Mich. 503]:

"No member of the city council nor any person holding any elective or appointive office under the city government shall be interested in any contract with the city, or be a bondsman or surety on any contract or bond given to the city," and the court held void a sale of some lumber by a corporation to the city because a city police commissioner had some stock in the corporation, although he had had nothing to do with the purchase of the material.

Respondent also quotes an opinion of the attorney general or letter written its county attorney, that a bank in which a county officer has stock may not become a county depository. To offset that opinion appellant refers to an exhaustive opinion by United States Attorney General Mitchell as to whether Mr. Mellon in being secretary of the treasury violated U. S. Code, Title V, § 243, providing: "No person appointed to the office of secretary of the treasury, or treasurer, or register, shall directly or indirectly be concerned or interested in carrying on the business of trade or commerce," etc. he

being a stockholder in corporations engaged in trade or commerce, but not holding a majority stock in any, nor being an officer, nor taking any part in the management of any of such corporations. The attorney general reached the conclusion that Mr. Mellon did not violate the provision quoted. The opinion cites U. S. v. Delaware & Hudson Co. 213 U. S. 366, 29 S. Ct. 527, 53 L. ed. 836, construing the Hepburn Act (c. 3591, § 1, act of June 29, 1906, 34 St. 584) which makes it unlawful for any railroad company to transport any commodity which it may own or produce or "in which it may have any interest direct or indirect," holding that the fact that the railroad company held some stock in a coal company did not make it illegal for the railroad to transport the coal owned or produced by that coal company.

We think the designation of the First National Bank was valid, and upon the depository bond being approved it became a legal depository for county funds. Respondent also cites School Dist. No. 1 v. Aiton, 173 Minn. 428, 217 N. W. 496; School Dist. No. 1 v. Aiton, 175 Minn. 346, 221 N. W. 424; School Dist. No. 13 v. Nissen, 177 Minn. 479, 225 N. W. 444; but in each case the treasurer of the school district took active part in designating the depository bank of which he was also an officer. We do not see that State v. National Surety Co. (Iowa) 230 N. W. 308, has any bearing upon the controlling points in the case at bar. We do not consider G. S. 1923 (2 Mason, 1927) § 10305, is applicable here, for that relates to officers authorized to enter contracts. Bakke was not authorized to take any part and took no part in making the depository contracts.

The next proposition urged by respondent to sustain recovery is the overdeposits made in these banks, principally the first part of June, some months before their closing. It is contended that the rule "first in first out" controls, and hence the deposits made before the limit was attained should be considered the ones first withdrawn after the limit was reached; the consequence would be that deposits made thereafter would all be and remain unlawful. The memorandum of the trial court does not indicate that the de-

cision was placed on the ground stated. Nor do we think it could, for the court found specifically as to the First National Bank "that the county treasurer intended by the withdrawals to reduce the balance in said bank on said checking account below the maximum permitted by the depository bond." But regardless of that finding, the balance in both banks for weeks before their closing was below the authorized deposit and so remained until they were closed. It is therefore impossible to find that any overdeposit, no matter in what shape it was made or carried, was the proximate cause of any loss to the county. The treasurer has paid out for the county all moneys these two banks ever had belonging to it except the amounts that stood to its credit when the banks closed, and in either case that was much below the authorized deposit. It is not shown that the overdeposits in June affected or diminished the assets of the banks or increased the liabilities existing when they closed. There is no legitimate ground in this record for an inference or conclusion that if any loss now results to the county from the insolvency of the banks it is the result of overdeposits or of taking and holding certificates of deposits or cashier's checks for a week or two in May or June of 1925.

The trial court found in substance that as to the First National Bank it was in a critical condition financially and in fact insolvent on May 11, 1925, and so remained until it closed; that Bakke knew it and failed to notify the county board and failed to withdraw the deposit and negligently failed to use it to pay certain then payable obligations of the county; and that the loss sustained by plaintiff by reason of the moneys on deposit in this bank was not caused wholly and solely by the acts or insolvency of the bank, but that the approximate cause of said loss was the negligent and unfaithful acts of the county treasurer in the performance of his duties. The finding is substantially the same with respect to his dealings with the deposits in the Warren National Bank, except the date after which insolvency became known to Bakke is fixed as of October 5, 1925. These findings are challenged as unsupported.

We have read the testimony with care and reach the conclusion that these findings are not justified upon a fair consideration of

the record in so far as the same relate to Bakke's knowledge of the true condition of the banks and his negligence or lack of faithfulness in the discharge of his duties to the county. It must be remembered that government examiners, experts in that work, frequently examined these banks and had let them run; that in January, 1925, the board of auditors selected them as county depositories and the board of county commissioners approved the adequacy of the bonds and the sureties these banks then gave; all of these officials resided or did their official work in the same place as Bakke and presumably were as well informed of the financial condition of the banks as he; there is no evidence that either bank suffered any peculiar or sudden loss in its assets after January, 1925, or that there was any subsequent mismanagement of any kind whatever in either bank whereby loss occurred; there is no testimony from any officer in either bank or from any bank examiner that they considered the banks insolvent before their doors closed. The testimony is that the year 1924 had been a good year for the banks, the crops had been abundant, and in a farming community like Marshall county that affects the conditions of the banks greatly. But as the season advanced in 1925 rain became excessive, eventually resulting in a very poor crop, and seriously affected the collectibility of the bills receivable of the banks. The same bills or notes that readily would have been met had there been a good crop remained unpaid because the crop failed. It is not reasonable to infer that Bakke should have had greater knowledge of the influence of climatic conditions on the banks in the county than the officials of the banks or the government examiners.

Respondent relies much on the admission wrung from Bakke on the witness stand that he knew depository banks of the county, about 20 in all, were in need of funds and that some time in June when there were overdeposits in the three Warren banks an officer of the First National requested him not to make "bulky" withdrawals. But this is far from an admission that Bakke knew that the bank was insolvent or in danger of insolvency. It seems to us that to charge Bakke for loss of funds in depository banks where

such funds are less than the permissible deposit it should be shown that he was guilty of conduct approaching bad faith. He had a right to believe that the county's interests were properly protected by these two depository bonds for $100,000 and $90,000, respectively, upon which well known residents of the county had become the sureties and whose qualification as such the county board had passed upon and approved. He had to consider what effect a withdrawal of deposits would have not only upon the one or two banks concerned but upon all the depository banks of the county.

But it is contended that as compared with the deposits in other depositories there was 35 per cent in the First National Bank shown upon the balance sheet of October 1, 1925. This of course may be taken strongly against Mr. Bakke. But we do not believe it rises to the dignity of proof that he then knew or should have known that that bank was insolvent or that he should have done something that would have averted a loss to the county.

The county in this action seeks to hold Bakke and his sureties liable for the funds to its credit when the two banks failed. In each case such amount is several thousand dollars less than the deposit the treasurer was authorized to make therein in virtue of the bank's depository bonds and G. S. 1923 (1 Mason, 1927) § 856, which reads:

"Whenever any portion of the funds of a county shall be deposited by any county treasurer hereunder, such treasurer and the sureties on his bond shall be exempt from liability for the loss of any such deposited funds from the failure, bankruptcy, or other acts of the depository, to the extent and amount of such funds so lost then in the hands of such depository."

If any of the funds of the county in the banks when they closed are lost to the county, it had the burden to show not only how much of those deposits will be a loss to it, but also that such loss proximately resulted from some dereliction of Bakke. Obviously and naturally, when funds are lawfully on deposit in a bank and the bank fails so that the depositor loses all or a portion of the deposit, such loss is caused solely by the failure of the bank—in that enough

cannot be realized from its assets to pay its liabilities in full. These banks did fail owing the county these sums lawfully to its credit, and in such amounts that the depository bonds under the section quoted absolved the treasurer and his official bondsmen from liability. We quote again the apt words used in U. S. F. & G. Co. v. Title G. & S. Co. (D. C.) 200 F. 443, 448, set out in School Dist. No. 1 v. Aiton, 175 Minn. 346, 351, 221 N. W. 424, 426:

"The immediate cause of the loss in this case was not the way in which the money went into the bank, but the fact that it got out of the bank into hands other than those to whom it belonged. * * * All the illegal things which the treasurer is said to have done might have been done without causing anyone to lose a penny, had the bank kept the money which he deposited with it and paid it to the state upon demand."

In our opinion the loss to the county, if any loss there be, flows directly and wholly from the banks' failures and not from any proved culpability or unfaithfulness of Bakke.

Defendants complain of many rulings of the court receiving evidence over their objection tending to show values of bills receivable and of real estate owned by the banks, also as to proof of amounts that might be realized from the sureties on the depository bonds under some contingent agreements with them. But under the view we take of the controlling questions above discussed these alleged errors become unimportant.

The order denying a new trial is reversed.

HILTON, J. took no part.

UPON APPLICATION FOR REARGUMENT.

On January 2, 1931, the following opinion was filed:

HOLT, J.

Through inadvertence the one who formulated the opinion omitted to distinguish the case of State v. Byhre, 137 Minn. 195, 163 N. W. 282, from the one at bar. The brief of respondent plainly indicated that not only respondent but the learned trial court, and, it is to be assumed, the attorney general in the response to the letter alluded

20

to in the opinion, relied on language used in the Byhre case. So just cause was given for the petition for rehearing.

The case mentioned was however duly considered by the court and the conclusion reached that the language there used must be confined to the issue or question there presented. This court there overruled the defendants' demurrer to an indictment which charged that they (the county auditor and county commissioner of Cass county) [137 Minn. 196] "did become unlawfully interested in a certain contract between Cass county and one Ole Skoog, for work, labor and business in and about the construction of State Rural Highway No. 45, the expense of which was and is payable from the county treasury of said Cass county, Minnesota, and continued to be interested in said contract during its completion, by then and there furnishing supplies, labor and equipment for the completion of said contract and sharing in the profits and proceeds of said contract, contrary to the form of the statute." The charge was that the defendants became unlawfully interested in the contract under which they furnished supplies, labor, and equipment for the completion of the contract and sharing in the profits thereof. It is plain that this means that they voluntarily entered either an agreement with the contractor to participate therein or were secret partners therein contrary to G. S. 1923 (1 Mason, 1927) § 990.

In the case at bar, after the designation of the bank as depository and the approval of the depository bond, with neither of which acts the county treasurer had any part, he was under the law required to deposit county funds in the bank; and hence his making such deposits were neither unlawful nor could the same be said to be his voluntary acts subjecting him to the penalties of § 990. We cannot adopt a construction of this section so that when a depository contract is made between a county and a bank by the designated authorities pursuant to the statutes such contract is to be held void if perchance some clerk or deputy of a county official, or a county official who has had nothing to do with the making or approval of the contract, happens to own a share of stock in the bank. We do not think State v. Byhre, 137 Minn. 195, 163 N. W. 282, so holds.

The language therein used must be understood as applicable to the facts charged in the indictment there under consideration. So understood the case is neither criticized nor overruled by the decision herein.

A rehearing is denied.

