# MOPPY ANDERSON v. PETERSON STATE BANK AND OTHERS.[1]

April 20, 1934.

No. 29,816.

[1]Reported in 254 N. W. 459.

*Larson & Gartner,* for appellants.
*David A. McVeety,* for respondent.

*I. M. OLSEN, Justice.*

Appeal by the defendants other than Peterson State Bank from an order denying their motion for a new trial. Included in the motion was a motion for amended findings of fact and conclusions of law, also denied.

The assignments of error challenge a number of the court's findings of fact and its conclusions of law. There is the further general assignment that the court erred in refusing to grant the motion for a new trial. The facts are not in dispute.

The brief facts are: The Peterson State Bank was designated as a depository of county funds of Fillmore county to the amount of $5,000 for the term of two years from January 7, 1930. The bank, as principal, and the appellants as sureties, gave their bond to the treasurer of Fillmore county, the plaintiff herein, in the sum of $10,000 to secure payment of the funds so to be deposited, and such bond was approved by the county board on March 19, 1930. Moneys were thereafter deposited in and withdrawn from the bank by the county treasurer from time to time. On many occasions the deposits were in excess of $5,000. On October 31, 1931, there

was $3,607.80 on deposit. On November 4 the amount was $7,490.99, and on November 10, $8,882.94. No further deposits were made. On November 13, 1931, the county treasurer drew his check for $5,000 on the account, payable to the First National Bank of Preston, Minnesota, and delivered same to that bank. The check passed through a number of banks and reached the defendant bank for payment on November 18 or 19. The bank held the check without payment being made, and on November 21, 1931, the bank closed and was taken over by the commissioner of banks for liquidation. The county treasurer then filed claim, on behalf of the county, for $8,882.94 county funds held by the bank. He claimed that, because of the failure of the defendant bank to pay the $5,000 check on presentation and its holding that check from the time it was received until the bank closed, it had accepted the check and created a trust and preference right in the funds of the bank. He claimed and was allowed such preference in the liquidation proceeding, and the $5,000 was paid to him, for the county, in full out of the assets of the bank, by the commissioner of banks in June, 1932. This left, as the indebtedness of the bank to the county or its treasurer, the sum of $3,882.94. Between that time and the time of the trial of this action, dividends to the amount of $1,164.89 had been paid by the commissioner of banks upon this remaining indebtedness. This left the sum of $2,718.05 as the amount for which the court found appellants were liable; any further dividends on the claim from the liquidation of the bank to go to the appellants.

Appellants' claim and argument, in substance, is as follows: That their liability on the bond was limited to $5,000, which is conceded; that this liability became fixed when the bank failed or refused to pay the check issued by the treasurer on November 13, 1931, on its presentation; that there was on deposit in the bank at that time an overdeposit of $3,882.94, for which these sureties were not liable; that when the commissioner of banks thereafter allowed and paid the $5,000 as a preferred claim on account of the check mentioned these sureties were under no further liability; that such payment paid in full their liability under the bond; that the payment should inure to the benefit of appellants only.

■ The important question is what effect, if any, the payment of $5,000 by the commissioner of banks had upon appellants' liability on their bond. They claim that this payment paid their liability in full. They urge the general rule that a payment made on an account, where same is not designated by either party to apply to any specific item or items, is to be applied on the first debit item or items of the account. A number of cases are cited applying this general rule to various fact situations, as, for instance, Radichel v. Federal Surety Co. 170 Minn. 92, 212 N. W. 171, where the surety bond of a ditch contractor provided that the surety should not be liable for claims for labor and material existing prior to the date of the bond. Payments had been made on such claims, which the surety sought to apply on claims arising after the date of the bond. This court held that the surety had no right to direct how payments made should be applied.

The rule as to the application of payments, if here applied, would not seem to aid the appellants. If it be so applied, the $5,000 payment reduced the indebtedness of the bank to $3,882.94, a sum well within the obligation of the bond, and left appellants liable for that amount, subject to such reductions of the indebtedness as might result from the payment to the county or its treasurer of dividends thereon in the liquidation proceeding. Board of Co. Commrs. of Redwood County v. Citizens Bank, 67 Minn. 236, 69 N. W. 912.

To establish that the payment of the $5,000 preferred claim paid in full their obligation under the bond, appellants would have to show that such payment was specifically applied on their bond liability by some action or conduct of the bank or commissioner, or of the county treasurer or county, or else show that appellants, by some right of subrogation, were entitled to credit for such payment upon their bond. There was here no application or designation by anyone of this payment upon the bond liability of appellants. It was not a payment of any dividend. In effect, it paid the check which the bank had accepted before closing. It left the parties in the same position as if the check had been paid by the bank when accepted, and left a balance of $3,882.94 in the bank, covered by

appellants' bond. County of Marshall v. Bakke, 182 Minn. 10, 234 N. W. 1.

■ Appellants take the position that because, when this payment was made, there was this deposit of $3,882.94 in the bank in excess of the liability limit of the bond and in excess of the amount for which the bank was designated as a depository by the county, such overdeposit was unlawful and could not, by reduction of the deposit below the $5,000 limit, become a liability on the appellants' bond. We are unable so to hold. The bond was conditioned for the payment of any money deposited in the bank by the county treasurer which the bank should fail to pay, up to the limit of the bond. A deposit of public funds in a bank for safe-keeping by the treasurer of a county or municipality, where such bank has not been designated as a depository for such funds, or where the deposit exceeds the amount for which the bank has been designated as a depository, is not unlawful. City of Cloquet v. N. W. State Bank, 172 Minn. 324, 215 N. W. 174; Farmers & M. State Bank v. Consolidated Sch. Dist. No. 3, 174 Minn. 286, 219 N. W. 163, 65 A. L. R. 1407; County of Traverse v. Veigel, 176 Minn. 594, 224 N. W. 159. The result of such a deposit is that the treasurer remains responsible therefor the same as for money in his hands. In case of an overdeposit in a designated depository, he remains liable therefor until the deposit is reduced within the authorized limit.

■ The question of subrogation is only incidentally involved here. Appellants have paid nothing. The general rule as to subrogation is that a surety is not entitled to subrogation until and unless he has paid the debt upon which he is a surety. 6 Dunnell, Minn. Dig. (2 ed. & Supp.) § 9038; 60 C. J. § 28, pp. 719, 720; Wentworth v. Tubbs, 53 Minn. 388, 397, 55 N. W. 543. There are some exceptions not here important.

■ Even if appellants had made some payment, their right to any subrogation as to the $5,000 payment made by the commissioner of banks as payment of a preferred claim does not follow. In U. S. v. National Surety Co. 254 U. S. 73, 41 S. Ct. 29, 65 L. ed. 143, the surety company had given a bond to secure a contract entered into by a contractor with the government. A loss occurred, and the

surety paid what it was liable for. The contractor went into bankruptcy, and the United States filed its claim for the balance as a preferred claim. It was allowed and paid as such. The surety claimed subrogation out of the payment made to the government from the bankruptcy estate. The court held that, as the government had preference and priority over all general creditors, the surety was not entitled to subrogation. While in that case the preference of the government is placed on the ground of federal statutes expressly giving such preference, we see no difference in principle. Here, as there, the creditor, the county, and its treasurer acting for it, had a like preference over all general creditors of the bank to the extent of the $5,000 payment.

■ A number of decisions, not herein cited, are contained in the brief for each of the parties. We do not find it necessary or useful to analyze or distinguish them. None of them are directly in point on the facts here presented. The case of City of Ortonville v. Hahn, 181 Minn. 271, 232 N. W. 320, 321, not cited in the briefs, requires some consideration. In that case suit was brought on the treasurer's official bond. The Ortonville State Bank was designated as depository of city funds coming into the hands of the city treasurer and gave a depository bond in the sum of $10,000. The bank failed and at the time it closed had on deposit $12,715.89 of city funds. A dividend of $1,935.91 was thereafter paid by the commissioner of banks to the city. Of this amount the city applied $1,500 upon the claim secured by the depository bond and $435.91 upon the excess deposit. Thereafter the sureties on the depository bond paid to the city $8,500, which with the $1,500 dividend applied on their bond paid their entire liability of $10,000. By such payments they became entitled to subrogation to any dividends received on $10,000 of the claim of the city against the bank. The city then brought the suit to recover on the treasurer's official bond the balance of the deposit over and above that part not paid by the apportionment of the part of the dividend mentioned and an apportionment of a part of a subsequent dividend upon the excess deposit. The defendants claimed that they were entitled to

credit or subrogation for the entire dividends paid. The trial court and this court held that the sureties on the treasurer's official bond were not entitled to subrogation or credit for any more than the proportionate share of the dividends applied as above stated. The question of subrogation of the defendants to these dividends was the issue in the case, and it was decided on that issue. There are general rules stated in the opinion which are correct as applied to the facts in that case, but not here controlling. The sureties on the official bond in that case having, as far as appears, paid nothing, were not in a position to claim subrogation, and, as held in Radichel v. Federal Surety Co. 170 Minn. 92, 212 N. W. 171, had no right to direct how payments should be applied. Again, the sureties on the depository bond in that case, having the right to subrogation and having discharged their full liability, the sureties on the official bond were in no position to claim that the city should give them credit for dividend payments that had been apportioned to the depository bond. A statement in that case [181 Minn. 273], that when the bank closed "the liability of the depository sureties became absolute for the full amount of the penalty of their bond," if strictly here applied, would result in these appellants being now liable for $5,000, they not having made any payment. That, of course, is not the meaning. The final amount of liability might be reduced or entirely wiped out by payments thereafter made out of the assets of the bank.

That decision is well summed up in this sentence [181 Minn. 273]: "It was not the intention of the parties to the depository bond that it should relate to money in excess of the penalty." So, in that case, because the full penalty of the bond had been paid, there was no further liability on the part of the sureties on the depository bond.

The distinctions on the facts here from the facts in that case are that these appellants have made no payment so as to be entitled to any subrogation, and the $5,000 payment made on the preferred claim operated the same as a payment made by the bank at the time the check was accepted before the bank closed; that it was a

payment of a preferred claim, to no part of which appellants were entitled to a subrogation, and the remaining indebtedness of $3,882.94 became and was a lawful deposit within the limit of the bond.

The order appealed from is affirmed.

