HARTFORD ACCIDENT & INDEMNITY COMPANY v.
FEDERAL CONSTRUCTION COMPANY AND OTHERS.[1]

July 9, 1926.

No. 25,433.

**Equity of surety of public contractor which had paid its laborers and materialmen superior to that of bank for money loaned.**

The surety on a public contractor's bond and a bank which loaned money to the contractor to enable him to perform the contract both laid claim to the unpaid balance of the contract price. The surety had paid laborers and materialmen whom the contractor had failed to pay and asserted that it had become subrogated to their right in the money the contractor had not received. The bank had taken assignments from the contractor which covered the unpaid portion of the contract price and asserted that it should receive the money by virtue of the assignments. The court found that the money loaned by the bank was used by the contractor in the general conduct of its business. The finding is supported by the evidence and justified the conclusion of the trial court that the equity of the surety was superior to that of the bank.

Subrogation, 37 Cyc. p. 372 n. 40.

See notes in 14 L. R. A. (N. S.) 457; L. R. A. 1918A, 937; L. R. A. 1918D, 736.

Action in the district court for Ramsey county on a public contractor's bond. Defendant National Exchange Bank claimed that it was entitled to the amount retained by the city on the contract, to the extent of its advances to the contractor, superior to the right of the plaintiff, its surety. There was judgment for plaintiff, Michael, J., and defendant appealed. Affirmed.

*Daggett & Pew,* for appellant.

*Sexton, Mordaunt & Kennedy,* for respondent.

[1]Reported in 209 N. W. 911.

LEES, C.

This is an appeal from a judgment denying the defendant bank the relief hereinafter mentioned.

On November 27, 1923, the defendant Federal Construction Company entered into a contract with the city of St. Paul for the erection of the Gorman Schoolhouse. The contract price was $38,977. The usual public contractor's bond was given, the plaintiff becoming surety thereon.

Sometime in the summer of 1923 the construction company began to borrow money from the defendant bank, giving assignments of moneys due under other contracts it had with the city. Early in the fall the company informed the bank that it expected to get the job of erecting the Gorman Schoolhouse and if it did it would need money to take care of bills for labor and materials while waiting for the payment of the architect's estimates, and asked the bank to advance the money. The bank agreed to make advances up to $15,000 upon assignments of moneys due from the city under the contract.

The bank made loans to the construction company in December, 1923, and January and February, 1924, aggregating $32,000. When the loans were made, assignments were given as agreed. The assignments were filed with the city comptroller. Prior to the commencement of this action, the city paid $6,174.25 to the construction company and $24,196.42 to the bank. Payment of the remainder of the contract price was withheld for the reason that claims for labor and material aggregating $17,669.61 were filed with the city comptroller. These claims having been paid by the plaintiff, it brought this action to recover the amount retained by the city. The bank answered, setting up the assignments it had obtained and the loans it had made, and alleged that the balance due from the company was $7,812.58, for which amount with interest it demanded judgment. It also prayed that the judgment should determine that the bank's claim upon the money retained by the city was superior to the claim of the plaintiff. This the court denied and the bank appealed from the judgment in plaintiff's favor.

The real controversy the court was called upon to determine was whether plaintiff or the bank had the better right to the money retained by the city.

The court found that the money the bank advanced was used by the construction company "in the general conduct of its business." The evidence supports the finding and for reasons to be stated presently it is determinative of the case. The court did not determine what portion of the amount· advanced was used to pay bills for labor and materials furnished for the erection of the Gorman Schoolhouse, but that is not material in view of the finding mentioned.

There is no substantial controversy as to the facts, but counsel differ about the legal principles to be deduced from our former decisions. A brief review of the cases may help to clear up the differences of opinion.

In National Surety Co. v. Berggren, 126 Minn. 188, 148 N. W. 55, it was held that when a surety for a public contractor is compelled to pay claims of laborers and materialmen, the surety becomes subrogated to their rights and has equities superior to those of one who loaned money to the contractor to be used by him as he saw fit, either in the performance of the contract or in any other way. It was also held that as between the surety and the contractor, or those claiming under him, the right of subrogation takes effect as of the date of the bond.

In New Amst. Cas. Co. v. Wurtz, 145 Minn. 438, 177 N. W. 664, it was held that, where a public contractor agreed to deposit in a bank all the money he received on the contract and the bank agreed to advance money to enable him to perform the contract, the money to be used only to pay for labor and materials furnished, and the agreement was performed by both parties, the equities of the bank were superior to those of the contractor's surety, who had been compelled to pay bills of laborers and materialmen.

In Ganley v. City of Pipestone, 154 Minn. 193, 191 N. W. 738, a similar conclusion was reached upon substantially the same state of facts, the court saying that the agreement between the bank· and

the contractors was that they should deposit with the bank the funds received from the city and that the bank should make advances to pay for labor and materials; that all the money advanced was paid to laborers and materialmen, thus relieving the surety from a portion of its liability and giving the bank the superior equity.

In Barrett Bros. Co. v. County of St. Louis, 165 Minn. 158, 206 N. W. 49, the contractor assigned his earnings under two road construction contracts to a grocer who furnished provisions for use on the jobs, and on others as well. The question was whether the grocer had a better right to the portion of the contractor's earnings which the county had retained than the surety on the contractor's bond, who had paid laborers and materialmen. It was held that the surety's equity was superior and that it became subrogated, as of the date of the bond, to the rights of the creditors whose claims it had paid. The Wurtz and Ganley cases were distinguished upon the ground that they presented an equity not found in the case under consideration, which arose from the fact that the advances made by the banks *all* went to laborers and materialmen and to that extent the surety's liability was prevented or reduced.

In Standard Oil Co. v. Remer, 167 Minn. 352, 209 N. W. 315, the Ganley and Wurtz cases were followed, and the Barrett Bros. case distinguished because of the absence of the equity which gives to the contractor's assignee priority over the surety.

Counsel for the bank cite Standard Oil Co. v. Day, 161 Minn. 281, 201 N. W. 410, 41 A. L. R. 1291, as applicable, but we think it is not. The question presented in that case was this: When a public contractor makes an unconditional payment to a subcontractor may the subcontractor use the money as his own, or must he apply it to the payment of bills for which the contractor's surety is liable? The court held that the money was wholly under the control of the subcontractor and that the surety could not direct the application of payments thereof and so relieve itself from liability for materials furnished to the subcontractor to enable him to do his work.

In the case at bar the contractor could use the money advanced by the bank as it saw fit. The proof is that only about $15,000 of the borrowed money was applied to the payment of bills for labor and materials used in the construction of the Gorman Schoolhouse, as against more than $24,000 received by the bank on the assignments. The equities in favor of the banks concerned in the Wurtz, Ganley and Remer cases are absent. Following these cases, it must be held that the surety's right of subrogation is superior to the claim of the bank and that the conclusion reached by the trial court was correct.

Judgment affirmed.