COUNTY OF AUDRAIN, MISSOURI, AT THE RELATION. AND TO THE USE OF FIRST NATIONAL BANK OF MEXICO, MISSOURI, A CORPORATION, RESPONDENT, v. JAMES C. WALKER, DOING BUSINESS AS ACME CONTRACTING COMPANY, AND THE FIDELITY AND CASUALTY COMPANY OF NEW YORK, A CORPORATION, DEFENDANTS, THE FIDELITY AND CASUALTY COMPANY OF NEW YORK, A CORPORATION, APPELLANT.
—155 S. W. (2d) 251.

St. Louis Court of Appeals. Opinion filed October 31, 1941.

Respondent's Motion for Rehearing overruled November 14, 1941.

Petition for Writ of Certiorari denied by Supreme Court, March 10, 1942.

*George A. Hodgman* and *Robert S. Lindsey* for appellant.

630

*Rodgers, Buffington & Adams* and *Cullen, Storckman & Coil* for respondent.

MAYFIELD, S. J.—This is a suit brought against a performance bond given by one James C. Walker, an individual doing business as Acme Contracting Company, as principal, and the Fidelity and Casualty Company of New York, a corporation, as surety, for the faithful performance of a building contract made by Walker with the board of trustees for Audrain County, Missouri, for the erection of a Nurses' Home at Mexico, Missouri. Judgment of the trial court was against Walker and his surety, but only the surety appealed here. The action is brought at the relation of the First National Bank of Mexico, and by it the bank seeks in its own right, and not as an assignee or subrogee, to recover on such bond. For purposes of designation and identification the respective parties will be referred to in the following manner: James C. Walker, doing business as Acme Contracting Company, as Walker; the board of trustees. of Audrain County, as board; the Fidelity and Casualty Company of New York, as surety; First National Bank of Mexico, as the bank; and the building contract will be called contract. A jury was legally waived by all of the parties to the trial and verdict and judgment was rendered by the trial court in favor of the bank for the sum of the penalty of the bond, to be satisfied upon the payment of the principal sum of $3094.46, together with interest thereon at the rate of six per cent per annum from the 27th day of August, 1937, to the date of the rendition of the judgment, and amounting at the time of such rendition to $285.70, which made the total sum of the judgment amount to $3380.16. The defendant surety company had filed a counterclaim along with other defenses and the court denied recovery on such counterclaim. The answer of Walker was a general denial but did not rise to the status of a legal denial of the execution of the building contract or bond by him.

The petition filed by the plaintiff set up the incorporation of the bank and the surety company, alleged the style under which Walker was doing business, and that on the 5th day of December, 1935, Walker made a contract with the Board for the erection of a Nurses' Home in the City of Mexico, Missouri, with the surety company and Walker giving a bond for the performance of such contract; that by the terms of such bond the obligors thereof bound themselves "to

pay to the proper parties as soon as the work contemplated by the contract had been completed, all amounts due for material, lubricants, oil, gasoline, grain, hay, feed, coal and coke, repairs on machinery, groceries and foodstuffs, equipment and tools, consumed or used in connection with the construction of such work, and for all labor performed in such work, whether by sub-contractor or otherwise, and to faithfully perform all and singular the terms and stipulations of said contract. Plaitniff further states that the work contemplated by said contract, has prior to the filing of this petition, been completed.''

The petition further alleged that before Walker began a performance of his contract, that he entered into an arrangement or agreement with the bank to the effect that Walker not being himself able to finance the payments for labor and materials used from time to time in the construction of the building, the bank would supply Walker with such funds; that pursuant to this arrangement the bank had advanced certain sums in various amounts and on different dates, and that the specific amount of $3094.46 was composed of funds supplied Walker by the bank between June 19, 1936, and August 7, 1936, and

''Plaintiff further states that all of the said sum of $3094.46 so furnished to Walker as aforesaid, was used by the said Walker for the payment of materials and labor used in and on the Nurses' Home in Mexico, Missouri.

''Plaintiff further states that by reason of the foregoing breach of the terms and conditions of the bond aforesaid, by the said Walker, the said bank has been damaged in the principal sum of three thousand ninety-four and 46/100 dollars ($3,094.46) and the defendants have become liable to the said bank for said amount.''

Judgment was prayed for the penal sum of the bond to be satisfied upon the payment of the amount of damages with interest thereon from the first day of September, 1936, and costs. In addition to the counterclaim of the surety company referred to above, the answer of this company consisted of several pleas, among which was the usual general denial, but not the execution of the bond; also that the Statutes of Missouri in conformity to which said bond was alleged to have been given, prescribed and designated the persons entitled to sue on such bond and that the bank was not such a designated person and was not one furnishing any of the items prescribed or referred to in the Statutes. The other matters pleaded in the answer of the surety company beyond the admission of the execution of the bond sued upon, are not important to this opinion. At the trial of the cause it was shown by stipulation entered into by the surety company and the bank, by exhibits and witnesses, that in December of 1935, the County of Audrain in its regular capacity as such, desiring to erect a nurses' home for such county, entered into a contract with Walker for the erection of the building for that

purpose. The local representative of the surety company in that county, with Walker, executed the bond herein sued upon on the 5th day of December, 1935, which was the same date of the contract for the erection of said home. The condition and terms of such bond will be referred to later herein. Sometime the latter part of January, 1936, such local representative of the surety company approached the president of the bank about furnishing funds to Walker with which to carry out his contract with the county and later such representative came back with Walker and several members of the board when the details of borrowing money for Walker were gone into and arrangements were made whereby the bank furnished funds as above stated; and on the 12th day of February, 1936, Walker executed a power of attorney to the bank, containing certain provisions, none of which are controlling in this opinion. It seems to be agreed by all of the parties, if Walker can be said to have agreed to anything in the trial, that the amount sought here to be recovered was actually advanced by the bank to Walker and was used by him in a legitimate manner for the payment of items that went into said home and toward performance of Walker's contract. The trial court so found, and also found that the bond given here, "was required by, in pursuance of, executed under and complied with Section 2890, Session Acts of 1933, page 179, and Section 2891, R. S. Missouri, 1929." These sections are now Sections 3277 and 3278, Revised Statutes 1939. The trial court also found that the home had been completed, and it was shown that the surety company had paid for some items for which it filed a counterclaim against the plaintiff. We do not deem either these items or the counterclaim important or controlling. In its conclusions of law, the trial court declared the capacity of the bank to maintain the action in the form it was brought; that failure to pay the bank "the balance due said bank . . . constitutes a breach of the terms and conditions of the surety bond, and that the bank was entitled to recover from such surety its damages by reason of such breach." There were other conclusions of law as well as findings of fact made by the trial court which are not herein embodied.

(1) At the outset of this case, this court finds itself confronted with the situation that neither in pleadings, proof, or finding of the trial court is it shown that there was a failure of performance of Walker's contract, upon which the bank herein seeks its recovery upon a bond given to secure such performance. The contract was the primary obligation and the bond was the secondary one. The bond was "conditioned that in the event said James C. Walker . . . shall faithfully and properly perform the foregoing contract according to all the terms thereof, . . . " In order for liability to accrue upon the bond it was absolutely necessary to a legal right of recovery, in the form of the present action, that a failure to perform

the contract be shown. The bond was given for the purpose of, and was to become liable only in the event Walker did not perform his contract himself, and upon performance by Walker it necessarily results that nothing was to be recovered or can be recovered upon the bond anymore than a criminal bond could be sued upon where the defendant appears in court. Plaintiff's petition does not allege non-payment for any of the items that the bond guaranteed payment for and which would, in law, constitute non-performance under Walker's contract and render the bond liable for payment therefor. When analyzed, the petition pleads, the evidence shows, and the trial court found, there was a performance of the contract by Walker by payments for the items covered by the bond and that the bank furnished the money or funds for such payment and performance, and that by reason thereof the bank should be reimbursed for having furnished funds with which performance was had and payments for items going into the building were made. This brings the bank to the place where it pleads and shows that it was the means of causing the performance of Walker's contract to pay for items used by Walker in the building, for which the bond would become liable if there had been non-payment. It is not fulfillment of Walker's contract that breaches his contract and rendered the bond liable, even though the bank was the cause of such fulfillment; it was non-fulfillment and non-performance, which meant no payment by Walker for specified items, that breached or broke the contract and rendered liability on the bond. There was no allegation in the petition nor evidence in the proof, that the items required to be paid for were not paid for; but the bank pleads they were paid for, that it furnished the money for such payment and should thereby be reimbursed. The source of the funds with which performance of the contract was made neither creates nor destroys liability on the bond. The contract was performed just the same. In such situation, if reimbursement to the bank is to be made, it must be from some source other than the bond given only to protect fulfillment or performance of a contract not pleaded or shown to have been broken, but on the contrary both pleaded and shown to have been performed with funds furnished by the bank. The bond was liable only when there was a breach of the contract and it had to step into and close such breach, but until there was a breach, the bond, as surety, could not and did not become liable. It was in the nature of a collateral promise or undertaking, of what might be termed, to answer for the debt, default, or miscarriage of Walker who, being the purchaser of labor and materials for the erection of the building, was in the first instance liable for the payment of all such items and for the performance of his own contract of such purchase. It was a promise, in effect, by the bond, that if Walker did not pay, the bond would and being so, non-payment by Walker had to be pleaded and proven,

because Walker had the first chance or first right to pay and it was only when Walker did not pay that the bond had to pay. The petition in referring to the only breach to which it makes reference says "that by reason of the aforesaid breach of the terms and conditions of the bond aforesaid," certain results were obtained. There is no allegation in the petition of the breach of the contract. The bond alone could not be breached. The contract had also to be breached and the contract, as shown by this record, did not require Walker to pay the bank anything. The bond could not be and was not liable for anything for which the building contract did not require payment to be made. Payment to a person furnishing money, regardless of the purpose for which such money was used, was not a requirement of performance of such contract. Two cases and the Statute are cited and relied upon by respondent herein for the support of the judgment rendered in its behalf. The first of these is Camdenton Consol. School Dist. No. 6 of Camden County ex rel. W. H. Powell Lumber Co. v. New York Casualty Company, 340 Mo. 1070, 104 S. W. (2d) 319; and the other is School District No. 18 of Caruthersville v. McClure et al., 224 S. W. 831. Counsel in their brief refer to these as the Powell and McClure cases respectively and they will be herein so indicated. In the Powell case it is shown that there was a breach of the building contract by the statement that:

"The contractor failed to pay the lumber company's account for materials in full, whereupon this action was brought on the contractor's bond in the name of the School District, at the relation of the Lumber Company, for the balance alleged to be unpaid and owing to the lumber company on the account."

In the McClure case a breach of the builders' contract was shown in this manner:

"The petition herein recites the conditions of the contract and bond, and charges breaches of said contract by McClure, and breaches of said bond by both defendants. It avers that plaintiff was compelled to take over and finish the building owing to McClure's failure to fully construct and finish same, as per the terms of said contract. . . ."

Without limiting ourselves to these cases, it will be found that in all instances in the State of Missouri where an action has been brought upon a bond of a building contractor, it has been both pleaded and proven that there was a failure of performance of the contract to build and that by reason of such failure the bond became liable to perform that which the contractor had not originally performed.

(2) It is conceded by all of the parties to this appeal and it was found by the trial court that the bond in this action was given to conform to what are now Sections 3277 and 3278, Revised Statutes 1939, formerly Section 2890, Revised Statutes 1929, as re-enacted by Laws 1933, page 179, and Section 2891, Revised Statutes 1929. Ap-

pellant contends, among other things, that the petition fails to state a cause of action, that the bank was not a proper party to maintain an action on a contractor's statutory performance bond, and that the recovery of money loaned by a bank to a contractor was not within the protection of a contractor's performance bond; and as a result of these contentions the appellant urges that its demurrers offered at the close of plaintiff's case and renewed again at the close of the whole case, should have been sustained. It is not contended that the bank furnished any of the specified items set forth in either the bond or the statute. Its only contention is that it furnished the money with which to pay for certain of such items. The building contract and the bond for the performance of the same both being made and entered into within the State of Missouri, were Missouri contracts and obligations and accordingly were governed by Missouri laws and rules of construction. Both the contract and the bond were to be construed by the ordinary rules of construction, that is, from all four corners.

"Such contracts of suretyship are to be construed as ordinary contracts, and under the rules applicable to ordinary contracts. The intention of the parties is the vital issue. [State v. Chicago Bonding & Surety Co., 215 S. W. 25; Lackland v. Renshaw, 256 Mo. 140, 150, 151, 165 S. W. 315.]

"This intention is to be gathered from the four corners of the instrument as you would gather the intentions of the parties in other contracts. In other words, we use the ordinary rule of construction to determine the meaning of the contract and the breaches thereof. [5 Cyc. 753.]

"Appellants speak of extending the obligation of the bond by mere implication. The rule is to get the intent of the parties under the usual rules of construction, and this rule we shall apply in the construction of this bond." [School Dist. No. 18 of Caruthersville v. McClure, 224 S. W. 831, 833.]

Applying these rules of construction to the bond in the present case it would seem that it is amply clear that a person or bank furnishing money or funds to a building contractor with which for him to perform, or with which he actually does perform such building contract is not within the contemplation of the Legislature as shown by the statutory provisions, and, consequently, was not within the contemplations of the parties to this action, as shown by the bond which contained the statutory wording and followed the language of such statute. Outside of and beyond what appears to be a misprint or clerical error in the bond where the word "food" appears following the word "hay" and where it seems intended that the word "food" should have been "feed," the words of the bond follow the exact wording of the statute. In the statute it seems clear that the Legislature made room for other provisions to have been made and contained within a bond given in conformity with the terms of Section

3277, Revised Statutes 1939, and yet to have conformed to the provisions of such section. This is said because this section of the statute contains the provision ". . . and such bond, among other conditions, shall be conditioned . . ." This is broad enough to show that had the parties in the present case provided after the specification of the items or articles set forth in the statute that the bond should provide for payment of or cover, persons furnishing funds or money for the payment of the aforesaid items, they still could have conformed to the statute. The bond here did not so provide. It did provide, as does the statute, with the apparent clerical error above noted, that it was "conditioned that in the event the said James C. Walker . . . shall faithfully and properly perform the foregoing contract according to all the terms thereof, and shall as soon as the work contemplated by said contract is completed, pay to the proper parties all amounts due for material, lubricants, oil, gasoline, grain, hay, food (feed), coal and coke, repairs or machinery, groceries and foodstuffs, equipment and tools, consumed or used in connection with the construction of such work, and all insurance premiums, both compensation, and all other kinds of insurance, on said work, and for all labor performed in such work whether by sub-contractor or otherwise."

To this was not added any provision by the parties that persons furnishing the money with which to pay for any or all of the above noted items should be likewise covered and protected by the bond as were the parties who did furnish such items or perform labor. When the parties themselves do not see fit to put something into their contracts or written agreements, all of them being parties of understanding and with contracting ability, then the court cannot and will not include within the terms of such written agreement that which the parties themselves nor the Legislature saw fit to include therein. It does not require construction or sophistry to see that in this instance the bare fact that the bank supplied Walker with funds with which to perform his contract, that such act on the part of the bank was not included in the provisions of the terms of the bond or of the statute in conformity with which such bond was given. On the premise that "birds of a feather flock together," or that a person is known by his associates, it seems perfectly clear that the Legislature and the parties to this bond had only in mind the protection, primarily at least, of the persons performing work or supplying the items and articles set forth in both the statute and the bond here. That this is undoubtedly the proper construction to be placed upon the language of the statute and the present bond seems illustrated further by the succeeding section 3278, Revised Statutes 1939, where, among other things, it is provided:

"Every person furnishing material or performing labor . . . for any contractor with the state, or any county, . . . where

bonds shall be executed as provided in Section 3277, shall have the right to sue on such bond. . . ."

This section does not contain a provision to protect any one other than a person furnishing material or performing labor, and does not provide that a person furnishing money with which to pay for material or for the performance of labor shall have a right to sue upon the bond given in conformity with the preceding section. There is no showing in this case that Walker failed to pay for any items to any person to whom the statute gives a right of action on the bond, as it is not shown that any persons who furnished any of the items covered by either the bond or the statute were not paid. It is pleaded and proven that they were paid, but were so paid by the money furnished by the bank. The bank does not seek to here sue or pursue a remedy as a subrogee or an assignee of the right of any persons who might have been or were paid with its money, but it seeks to recover in its own right by reason of having furnished money or funds which were used by Walker in the performance of his building contract.

Appellant cites and relies upon numerous authorities, both inside and outside the State of Missouri, but this contract being a Missouri contract and our own courts having laid down the rules of construction for the same, we are bound by and have followed the rules of construction of the courts of our own State. Respondent, as heretofore indicated, relies upon what we may here refer to as the Powell and McClure cases. Neither of these cases are authority, in principle or in fact, in the case with which we are here dealing. The Powell case cites as an authority for certain language it uses, the McClure case, but in the Powell case, the action sought recovery as a materialman for materials which the Powell Lumber Company had furnished for the erection of the building and for which payment had not been made. There was a failure of performance of the contract by the contractor, Dawson, and in suing upon the bond given for the faithful performance of the contract, it was shown that in addition to using materials of the Powell Company, in the erection and construction of the building, that Dawson also borrowed money from the same company and used it for the payment of payroll accounts or items which went into the building, much in the same or similar manner as Walker did in the present case. The Powell Company in its bookkeeping kept a separate account of the money loaned and of the material furnished, and in one instance where Powell had made payment to it without designating or appropriating such payment to a certain account, such company credited the money loaned account with the payment made by Powell, and left the greater part of the material account unpaid. When it was sued upon its bonds the bonding company contended that the Powell Lumber Company did not have the right to apply the payment made by Dawson to the money loaned account so as to pay it in full, but that it should have credited

the material account with such payment. In answering this contention our Supreme Court held that it was not tenable because "Appellant surety was liable for both labor and material accounts." This is unquestionably true under the wording of the bond given in the Powell case where the court said, on page 321 of 104 S. W. (2d) that the contractor was required to "furnish bond covering the faithful performance of the contract and the payment of all obligations arising thereunder." The language of the Supreme Court is that the "surety was liable for both labor and material accounts." This is far from saying that the surety is liable for money advanced or loaned for the payment of labor and material accounts, and the facts in the Powell case were that the party seeking recovery was included within the direct terms and provisions of the bond and the statute, because it was a materialman.

It is also true that Dawson owing more than one account to the Powell Company and making a payment to such company, by not specifying to which account it should be applied, the Powell Company had a right to appropriate such payment to either of the accounts. [Bradys Admr. v. Hill, 1 Mo. 315, 13 Am. Dec. 503; J. I. Case Threshing Mach. Co. v. Matthews, 188 Mo. App. 429, 436, 174 S. W. 198, 200; Short v. White et al., 234 Mo. App. 499, 133 S. W. (2d) 1039.]

The McClure case relied upon by respondent and cited by the Supreme Court in the Powell case had a set of facts entirely different from those in the case before us, as well as different terms and provisions in the bond. As disclosed by the opinion of the Supreme Court the bond there provides that " 'the principal and surety in this bond covenant and agree to repay the obligee all sums of money which the obligee may pay to other persons, in accordance with and under the terms of the contract plans and specifications, on account of work and labor done, or material furnished which the contractor may fail to do or to furnish.' "

The action there was brought by the direct obligee of the bond when McClure failed to perform his contract and in that action the school board, who was the obligee, sought to recover from the surety the sum of eight hundred ($800) dollars which it had paid to a bank on what amounted to McClure's legal order. The surety had covenanted and agreed in the bond "to repay the obligee all sums of money which the obligee may pay to other persons, in accordance with and under the terms of the contract plans and specifications, on account of work and labor done or material furnished which the contractor may fail to do or furnish."

McClure had failed and the direct obligee was seeking to have the surety repay to it that which the surety had expressly contracted to repay, and it seemed that the only necessary requisite for it to create a direct obligation under the bond, was for the obligee to

show that such payment was made to other persons and was made in accordance with the terms and specifications of the contract for materials that went into the building.

Neither of the above cases control in this case, nor are the facts of them so similar as to make them analogous. No cases have been cited or found in Missouri where a set of facts exist that are similar or analogous to those in the present case; and while, undoubtedly, the transactions between Walker and the bank here, as disclosed by this record, created legal obligations, yet such obligations were not against the bond, which specifically provided in conformity with the provisions laid down by the Legislature, that it was to cover only certain items, and the items herein sought to be recovered were not specified therein.

(3) The plaintiff herein having failed to either plead or prove a violation or a failure to perform the building contract by Walker, the bond did not become liable without such showing and the bank not being a person or party contemplated or contained within the terms and provisions of the bond was not entitled to maintain this action or to recover herein. The demurrer of the appellant at the close of all the evidence should have been sustained and the judgment of the trial court as to the appellant is reversed outright. *Hughes, P. J.*, not sitting; *McCullen, J.*, presiding in the case, and *Anderson, J.*, concur in separate opinions.

## SEPARATE CONCURRING OPINION.

McCULLEN, J.—In concurring in the well-considered opinion of Special Judge MAYFIELD herein, I think it is proper that I should add a few observations of my own.

The facts are clearly stated in the foregoing opinion and need not be restated here.

The whole controversy in this case in so far as the duty of this court to determine the matter is concerned revolves around the decisions of our Supreme Court in Camdenton Consolidated School Dist. No. 6 of Camden County ex rel. W. H. Powell Lbr. Co. v. New York Casualty Co., 340 Mo. 1070, 104 S. W. (2d) 319, and School Dist. No. 18 of Caruthersville v. McClure et al. (Mo.), 224 S. W. 831. They will be referred to as the Powell case and the McClure case, respectively. It is, of course, the plain clear duty of this court, in applying the law to the facts, to follow the latest decision of our Supreme Court on any questions of law or equity where such decision is found to have been based upon a state of facts similar to the facts in the case to be decided by this court. [Constitution of Missouri, Article VI, Amendment of 1884, Section 6.]

Respondent herein contends that the Powell case and the McClure case, *supra*, are analogous on their facts to the facts in the case at bar; and that the doctrine applied by our Supreme Court in those

cases is controlling in the decision herein. In the Powell case the Supreme Court referred to the McClure case with approval, and it may be said that the Powell case is the main reliance of respondent herein. In that case a principal contractor had given a performance bond for the construction of a school building. The Powell Lumber Company sold material to the contractor who had given the bond. The material was actually used in the construction of the building. In addition to furnishing lumber, the Powell Lumber Company had advanced to the contractor cash to be used and which was used by the contractor in the payment of labor bills on the school building. The lumber company and the contractor had made an arrangement whereby the contractor was to repay the lumber company advancements made out of payments received by the contractor from the school district under the provisions of his contract with the school district. Under the arrangement made, the contractor paid the lumber company the sum of $5148.60. The lumber company had advanced $5042.08 for the payment of labor bills. The lumber company, with full knowledge of the fact that the payment it received, namely, $5148.60, was money paid to it by the contractor out of money received by him from the school district under his contract for the erection of the school building, applied that amount in payment of the cash advance account and credited the remainder of $106.52 to the material account. The lumber company sued the contractor and the surety on the performance bond for the balance due on its material account. There was a judgment for plaintiff therein, and on appeal the surety contended that the amount of cash advanced by the Powell Lumber Company to the contractor was merely a loan and that it created only an indebtedness of the contractor to the Powell Lumber Company, and that the Powell Lumber Company, therefore, could not legally receive funds from the contractor which the contractor had in turn received in payment for work done on the school building and apply such money in extinguishment of such indebtedness, but that the Powell Lumber Company was legally and equitably bound to use the money so received, with knowledge of its source, to the extinguishment of the sum due on the material account. It was further contended by the surety in that case that the Powell Lumber Company had in fact been paid for the material furnished and had no cause of action therefor against the surety on the performance bond.

The Supreme Court held that the Powell Lumber Company was entitled to recover from the surety the amount due it for the materials furnished and used in the construction of the school building, and, in passing on this phase of the case, said:

"Appellant's position on this phase of the case is that though it be held liable as surety for the payment of labor performed and material used in the construction of the building and though money

advanced to the contractor by the Powell Company was advanced for the purpose and actually paid out for labor and wages, which, if not paid, appellant would be liable for, nevertheless the total sum so advanced by the Powell Company and paid out for labor should be considered and treated merely as a loan to the contractor and a debt of the contractor to the Powell Company without regard to how or for what purpose it was advanced and used; that the Powell Company knew that the payment made to it, and out of which it discharged its account for cash advanced to pay labor accounts, was money paid to the contractor under and by virtue of the contract and was therefore a fund which appellant as surety had an equitable right to have applied to the extinguishment of its liability; but that the Powell Company applied it on another debt, that is the debt of the contractor to it for money loaned to him; and that it (appellant) is equitably entitled to have credit on the material account in the full amount of the payment so made to Powell Company by the contractor, its principal. If this contention be allowed, appellant would be relieved of liability in that amount for labor and also escape liability in the same amount for material.

"We are inclined to the opinion that under the facts of this case it is, in effect, immaterial to which account the payment was credited, since it is shown, and the referee's finding is conclusive thereof, that the cash advanced (except that paid out for premium on bond) was used solely to pay for labor performed in the construction of this building and for no other purpose, and that all the material charged on the material account allowed by the referee was furnished for and used in this building and appellant surety was liable for both labor and material amounts." [Camdenton Consol. School Dist. No. 6 v. New York Cas. Co., 340 Mo. 1070, 1086, 1087, 104 S. W. (2d) 319, 328.]

Respondent earnestly insists that inasmuch as there was conclusive evidence in the case at bar to sustain the finding of the trial court that the amount which respondent seeks to recover herein was all actually used in the payment of material and labor and consumed in the construction of the nurses' home at Mexico, which was the subject-matter of the bond herein, this case must be held to come clearly within the doctrine of the Powell case, *supra*; and that respondent is therefore entitled to recover.

It would seem at first blush that respondent's contention herein ought to be sustained on the authority of the Powell case, particularly in view of the language of the Supreme Court in the paragraph of its opinion last above quoted. However, it is a well-established principle of law in this State that language in opinions of courts must be read and interpreted with reference to the facts and issues involved therein. [Keeton v. Gaiser, 331 Mo. 499, 55 S. W. (2d) 302; Powers v. Kansas City Pub. Serv. Co., 334 Mo. 432, 66 S. W. (2d)

840; State ex rel. Woodmansee v. Ridge, 343 Mo. 702, 123 S. W. (2d) 20.] As pointed out in the opinion of Special Judge MAYFIELD herein, there is a distinction between the Powell case and the case at bar on the conceded facts which, I am convinced takes this case out of the doctrine of the Powell case.

In view of the fact that the Supreme Court itself, in another part of its opinion in the Powell case, clearly stated facts which showed that there were both allegations in the petition and evidence to prove that there was a breach of the building contract therein (thereby giving rise to liability on the bond), I do not believe that it can properly be said that the language used by the Supreme Court in reaching its conclusion was intended to apply to a case such as this where there is neither allegation nor proof of the breach of the building contract. On the contrary, we must, under the rule above mentioned, limit the application of the language mentioned to facts and issues such as were before the court in that case.

In the Powell case, as heretofore pointed out, there was a breach of the building contract in that the contractor failed to pay the lumber company's account for materials in full. That failure was alleged in the petition and the proof sustained the charge. In the McClure case, *supra,* the petition alleged the conditions of the contract and bond and charged breaches thereof and the proof sustained such charges. In each case, therefore, there was both allegation and proof of breaches of the contract giving rise to liability on the bond involved therein; whereas, in the case at bar there is neither allegation nor proof of any breach of the builder's contract which would give rise to a liability on the bond, but, on the contrary, it is both alleged and proved that the building contractor performed all the conditions of the building contract, hence there were no facts pleaded or shown as a foundation for liability on the surety bond.

I therefore concur in the opinion of the Special Judge herein.

### SEPARATE CONCURRING OPINION.

ANDERSON, J.—I concur fully in the opinion this day filed by the Honorable WALDO C. MAYFIELD. However, because of the importance of the questions involved, I desire to record certain of my views in respect to the case, and, therefore, am filing this concurring opinion.

Appellant insists that the trial court erred in failing and refusing to give its declaration of law in the nature of a demurrer to the evidence at the close of the whole case. Respondent contends that the trial court properly refused said declaration, and bases its right to an affirmance of the judgment in its favor upon two decisions of our Supreme Court, namely, Camdenton Consolidated School Dist. No. 6 of Camden County ex rel. W. H. Powell Lumber Co. v. New York Casualty Co., 340 Mo. 1070, 104 S. W. (2d) 319, and School Dist. No.

18 of Caruthersville v. McClure (Mo.), 224 S. W. 831. Respondent says that the Supreme Court in these cases has definitely, clearly, and unequivocally held that money lent to a contractor, which money is expended in the purchase of materials and for the payment of labor consumed in the work under the construction contract, is an item protected by and is within the terms of a contractor's bond, like or similar to the one executed by the contractor in the case at bar.

In the first named case the Powell Lumber Company, a corporation, sold material to a contractor who had given a performance bond, which the court there held was in effect a bond under Section 2890, R. S. Mo. 1929, for the construction of a certain school building. The material so furnished was actually used in the construction of the building. The Powell Lumber Company had, in addition to furnishing this lumber, advanced to the principal contractor certain sums of cash to be used, and which were used by the contractor, in the payment of labor bills on the school building. The arrangement entered into between the lumber company and the principal contractor was one whereby the contractor was to repay to the lumber company the advancements made by it out of payments received by the contractor from the school district under the provisions of his contract with the district. Under such arrangement the contractor paid to the lumber company the sum of $5,148.60. The lumber company had advanced, in money, the sum of $5,042.08, for the payment of labor bills. The lumber company, with full knowledge of the fact that the payment it received, namely, $5,148.60, was money paid to it by the contractor out of money received by him from the school district, under his contract for the erection of the school building, applied said amount so received in payment of the cash advance account, and credited the remainder of $106.52 to the material account. The lumber company then sued the principal contractor and the surety on the performance bond for the balance due on its material account. The contention of the surety, on appeal from the judgment for the plaintiff in that case, was that the amount of cash advanced by Powell to the contractor was merely a loan, and created only an indebtedness of the contractor to the Powell Company, and that the lumber company, therefore, could not legally receive funds from the contractor, which the contractor had in turn received in payment for work done on the school building, and apply such money in extinguishment of this indebtedness, but that said Powell Company was legally and equitably bound to use the money so received, with knowledge of its source, to the extinguishment of the sum due on the material account. The surety argued, therefore, that the Powell Company had been in fact paid for the material furnished, and had no cause of action therefor against the surety on the performance bond. The Supreme Court, therefore, in order to hold in the Powell case that the lumber company was entitled to recover from the surety the amount due it

for the materials furnished and used in the construction of the school building, necessarily had to hold as a prerequisite that the Powell Company had a right to apply the money paid to it by the contractor to the extinguishment of its cash account, which was made up, of course, of amounts advanced to the contractor by the lumber company. The Court denied the surety company's contention in the case, saying:

"We are inclined to the opinion that under the facts of this case it is, in effect, immaterial to which account the payment was credited, since it is shown, and the referee's finding is conclusive thereof, that the cash advanced (except that paid out for premium on bond) was used solely to pay for labor performed in the construction of this building and for no other purpose, and that all the material charged on the material account allowed by the referee was furnished for and used in this building and appellant surety was liable for both labor and material accounts. . . . Crane Co. v. Pacific Heat & Power Co., 36 Wash. 95, 78 P. 460, is fairly illustrative of the cases cited and relied upon by appellant in support of its contention that it, as surety, was equitably entitled to have the whole of the payment made by its principal to the Powell Company credited upon the material account. The facts set out therein are such as clearly invoke the application of the equitable principle which appellant advances here but under the facts of the instant case, and in so far as the equities are concerned, the equity of the Powell Company in the funds paid to it out of the payment to the contractor on the contract was superior to that of the surety. [Hartford Accident & Indemnity Co. v. Federal Construction Co., 168 Minn. 202, 209 N. W. 911; New Amsterdam Casualty Co. v. Wurtz, 145 Minn. 438, 177 N. W. 664; Ganley v. City of Pipestone, 154 Minn. 193, 191 N. W. 738.]"

The respondent says in its brief that the Supreme Court, in the above case, could not possibly have reached the conclusion which it did reach without having first decided the very question involved in the case at bar, for if the Court had held that the Powell Company, as a lender of money to a contractor for his use in paying material and labor bills, was not entitled to recover from the surety on the bond, then the Supreme Court must have consequently held that plaintiff could not recover in the Powell case because it had in fact been paid for the material furnished.

I am unable to agree with respondent upon the interpretation and effect of the Powell decision, as developed in its brief and as presented at the oral argument. I do not believe that it rules this case, but to clearly demonstrate the difference between the two cases, a further analysis of the Powell decision is necessary.

The case merely held that a surety cannot, in the absence of a superior equity in his favor, insist upon the application by the principal and the creditor, or either of them, of the payments made by the principal out of funds derived from the construction contract,

to the payment of claims covered by the bond. The court held that the surety in that case did not possess such superior equity.

The equity possessed by the surety in the Powell case was not the equity enforced in favor of the surety in the case of Prairie State National Bank v. United States, 164 U. S. 227, or by this court in Massachusetts Bonding & Ins. Co. v. Ripley County Bank, 208 Mo. App. 560, 237 S. W. 182, and in Lincoln County v. Du Pont de Nemours et al., 224 Mo. App. 1183, 32 S. W. (2d) 292. Those cases did not involve payments made to contractors, but reserved percentages retained under the construction contract, to secure the final performance of the obligation, and it was held in each case that the surety became subrogated to those funds retained. The cases have no application to money not reserved as a security but paid over to the contractor. The better view seems to be that it is for the public interest, in the absence of agreement to the contrary, to permit such funds to be freely applied in the commercial world as the contractor may see fit. Under this view, such funds are not trust funds to secure the surety, who after all is but a contingent creditor. [Third National Bank v. F. & S. Co., 65 F. (2d) 548; Sturtevant Co. v. Fidelity & Deposit Co., 92 Wash. 52, 158 P. 740; Kane v. Bank, 56 F. (2d) 534; Standard Oil Co. v. Day, 161 Minn. 281, 201 N. W. 410; Jefferson v. Church, 41 Minn. 392, 43 N. W. 74; Grover v. Board, 102 N. J. Eq. 415, 141 Atl. 81; Sampson v. Commonwealth, 208 Mass. 372, 94 N. E. 473; Radichel v. Federal Surety Co., 170 Minn. 92, 212 N. W. 171.] Under the foregoing cases, when the money was paid to Powell, it was free from any right of subrogation directly derived from the original contract of suretyship.

But the Powell opinion does speak of an equity in favor of the surety. Such equity does not have a contractual basis, as that involved in the Prairie State bank case, and could only be based upon the broad principle of justice, that where instalments are paid under the construction contract to the contractor, the money should be used by him to pay only claims for which the surety is responsible, when both the contractor and the person receiving the funds know its source. If this is the nature of the right, then there is also force to the argument that under the broad general view, if the surety's obligations are in effect paid by the loan, the surety will not be heard to say that the money paid under the construction contract should have been applied to another obligation for which it was also liable. The principles of natural justice perhaps demand it, otherwise injustice would result. It would be inequitable to give the surety this double advantage and perhaps that was the basis of the ruling in the Powell case.

Whether this was the nature of the equity of the Powell Lumber Company, or whether its equity was a right of subrogation to the claims of laborers and materialmen, is not readily apparent from the opinion. But which ever view is adopted, I do not think the

Powell case stands for the proposition that a money lender may recover on a bond such as involved in this case.

That opinion cites three cases from the Supreme Court of Minnesota, thereby adopting the Minnesota rule as announced in those decisions. To properly understand, therefore, the doctrine adopted by our Supreme Court it is necessary to examine the cases cited. It is from them that we find the basis of the rule announced, which is, of course, binding on this court.

One of the cases cited is New Amsterdam Cas. Co. v. Wurtz, 145 Minn. 438, 177 N. W. 664. It is the leading case. In that case on July 17, 1917, one Wurtz entered into a contract with defendant school district for the construction of a school building. The contract price was $52,381, 85% of which was payable in instalments upon estimates to be made by the supervising architect during the progress of the work, and 15% of which was to be withheld until the building was completed and accepted. The building was completed and accepted on August 10, 1918. There was then due the contractor $7,970.75, the unpaid portion of the contract price.

Shortly after making the contract, Wurtz and the defendant bank agreed that the former should deposit in the bank all money he received from the school district, and that, if it was insufficient to enable him to carry on the work, the bank should make advances to him, crediting the amount thereof to his account and taking his notes therefor. It was agreed that the money credited to this account should be drawn out only to pay for labor and materials furnished for the construction of the school building. On February 7, 1918, Wurtz did not have sufficient money to carry on the work. Thereupon the bank credited his account with $5000 and took his notes for that amount, together with an order on the school district for the payment of the amount of the notes and interest. From the $5000 which the bank had advanced Wurtz, he paid the sum of $4500 to laborers and materialmen in accordance with the original agreement. Thereafter the school district paid to the bank $4,735.22. When the school building was completed, Wurtz owed large sums to laborers and materialmen, which he could not pay, and for which plaintiff was liable on its bond. The insurance company then brought this action against Wurtz, the school district, the bank, and the holders of claims for materials and labor, to compel the bank to refund to the school district said $4,735.22 or pay same to plaintiff for the payment of the claims of materialmen and laborers. The court gave judgment for the bank and upon appeal this action of the Court was affirmed. The opinion states:

"It is to be noted that the money advanced by the bank discharged the obligation of the contractor and his surety to the extent that it sufficed to pay the claims of laborers and materialmen. There is authority to the effect that the bank would have become subrogated

to the rights of such claimants in the fund retained by the school district if it had taken an assignment of the claims paid with the money it advanced. [United States v. Rundle, 107 Fed. 227, 46 C. C. A. 251, 52 L. R. A. 505.] It must be conceded that the rights of such claimants in the fund were superior to plaintiff's rights. Although the bank took no assignments of the claims paid, its failure to do so does not alter the fact that in advancing its money to the contractor for the purpose stated it relieved plaintiff from its obligation to pay them. If plaintiff may now compel the bank to refund, it will be the gainer and the bank the loser in a double sense. If the bank must pay the amount advanced a second time, it will lose $4500 and interest, and with this money plaintiff will be able to satisfy unpaid claims for which it is responsible, and thereby be the gainer at the expense of the bank. A mere statement of the result that would follow if plaintiff's contention were sustained demonstrates its want of equity.''

The Court distinguished the Prairie State Bank case and others on the ground that the banks there were mere volunteers and under no legal obligation to lend money to the contractor. But as to the bank in this case, the Court said:

''In the present case the bank was bound to finance the contractor. Its obligation to him was no less clear than plaintiff's obligation to laborers and materialmen.

. . . . . .

''We think the distinction above noted may justly be drawn, and that one who has made an agreement with a contractor such as there was in the present case stands in a different position from one who voluntarily loans money to him.''

There then follows the most interesting passage of the opinion, which gives the basis of the bank's rights. The court says:

''The equities are clearly with the bank, and equity is of the essence of the doctrine of subrogation. [Emmert v. Thompson, 49 Minn. 386, 52 N. W. 31, 32 Am. St. Rep. 566; Northern Trust Co. v. Consolidated Elev. Co., 142 Minn. 132, 171 N. W. 265, 4 A. L. R. 510.]

''We hold that upon the facts here presented plaintiff's right of subrogation is not superior to the bank's right to retain the money, and that the learned trial court correctly decided the controversy in the bank's favor.''

In Ganley v. City of Pipestone, 154 Minn. 193, 191 N. W. 738, cited in the Powell opinion, the same rule of law was applied, but in Hartford Accident & Indemnity Co. v. Federal Construction Co., 168 Minn. 202, 209 N. W. 911, the bank was denied recovery, because under its agreement with the contractor the latter could use the money as it saw fit, and did use it in the general conduct of its business. In other words, for the rule of the Wurtz case to apply, the agreement must be that the money lent is to be used by the contractor exclusively for the payment of items lienable under the bond.

It will be observed that the three Minnesota cases were not suits on contractor's bonds, but involved money earned under the construction contract and paid under assignments to the bank or retained percentages in the hands of the obligee, and the court held that the equity of the bank under such circumstances was superior to the equity of the surety company. The Minnesota courts have never held that a bank that lends money under an arrangement such as shown by the Wurtz case has an action on a contractor's bond, but on the contrary, in subsequent cases has expressly held that the doctrine of the Wurtz case cannot be applied so as to give a bank lending money such an action. Thus, in First National Bank of Chisholm v. O'Neil, 223 N. W. 298, the plaintiff bank had agreed to, and did advance the money needed to enable the contractor to perform the contract, and the latter executed notes for such advances, and assigned to plaintiff all moneys earned or to be earned under the contract. Pursuant to the agreement, the contractor turned over to and deposited with plaintiff all moneys received from the State, and made all payments for labor and materials by checks drawn on the plaintiff, each check specifying the item in payment of which it was issued. It was agreed between the bank and the contractor that the bank should be subrogated to all rights and remedies of the payees of the checks. Neither the defendant surety nor the payee of the checks had any notice or knowledge of this agreement between the bank and the contractor. At the completion of the contract, plaintiff had advanced the sum of $28,892.81 over and above the amount received from the State, but there was a balance of $11,442.68 still due from the State and the bank brought suit for both said amounts. The trial court held that it was entitled to recover and as against the surety it was entitled to the amount due from the State, but held that the surety was not liable for the money advanced by the bank to the contractor. On appeal the question was whether the surety was liable for those advances. The court held that the surety was not liable, and in distinguishing the case from the Wurtz case, said:

"The cases of New Amsterdam Casualty Co. v. Wurtz, 145 Minn. 438, 177 N. W. 664; Ganley v. City of Pipestone, 154 Minn. 193, 191 N. W. 738, and Standard Oil Co. v. Remer, 167 Minn. 352, 209 N. W. 315, cited by plaintiff, are not in point. In those cases the contractor had assigned to the bank the money to accrue under the contract and the bank had obligated itself to, and did, pay claims of laborers and materialmen; and the question was whether the bank or the surety was entitled to the balance due under the contract. It was held that the bank, under its assignment, was entitled to this balance to the extent necessary to reimburse it for payments made for labor and material for which the surety would otherwise have been liable; but there was no suggestion that the bond covered such payments, or that the bank had any recourse against the surety for reimbursement therefor.

''The agreement between the contractor and the bank that the latter, on paying the checks, should be subrogated to the rights and remedies of the payees therein, was wholly ineffectual to accomplish that purpose; for the payees were not a party to it, had no knowledge of it, and neither assigned nor intended to assign their claims to the bank. They simply accepted checks for the amounts due which they presented for payment in the usual manner and received their money. Their claims were thereby satisfied and extinguished.

. . . . . .

''We concur in the conclusion of the learned trial court that plaintiff did not acquire the claims of the payees of the checks nor become subrogated to any rights whcih they may have had under the bond.''

In First National Bank v. Hagquist (Minn.), 225 N. W. 11, the bank brought suit against the surety. The petition alleged that the contractor, Hagquist, had made a written contract with the plaintiff, in which it was ''agreed that the money from such estimates shall be paid to the second party herein (plaintiff) by Tingdale Bros., Inc., and the second party (plaintiff) agrees to and will loan and advance moneys to the first party (Hagquist) for the sole and express purpose of paying such labor, supply and material accounts only. . . . The first party (Hagquist) hereby assigns to the second party (plaintiff) all such moneys coming from said estimates as security for the payment of such loans and advances to be used as above stated and he hereby directs and authorizes said Tingdale Bros., Inc., to make the payments to the second party (plaintiff) herein direct pursuant to the terms of this agreement.

It was then alleged that pursuant to this agreement plaintiff paid accounts for labor and material; that the contractor failed; that there was an unknown amount of earned money for work which had been performed, that had not been paid, and that defendant took possession of the work. Plaintiff sought to recover $1000, the amount of its loans, less estimates paid to it.

In affirming the action of the trial court in sustaining a demurrer to the petition, the court said:

''Plaintiff, pursuant to its agreement with the contractor, did pay accounts for labor and material relative to said work to the extent of $7000, and received through estimates for work completed $6000. The contractor failed. Plaintiff's loans and payments ceased. There was then an unknown amount of earned money for work which had been performed that had not been paid. Defendant took possession of the work and put a force of men to work thereon. Plaintiff seeks to recover $1000 of its claim from defendant.

''It is to be noted that the complaint does not seek to establish an equitable right to the unpaid estimates or earned money superior to the rights of defendant, the surety. The complaint does not show that defendant has in any way in relation thereto invaded plaintiff's rights.

The question whether it is entitled thereto by virtue of its assignment is not presented to us by the record. There is no averment of any controversy as to such estimates, and the complaint does not disclose the disposition of such alleged unpaid estimates. The mere fact that the unpaid earned money existed does not attach liability to defendant. The complaint does not charge defendant with having collected it; nor does it appear that plaintiff cannot have the same by asking for it. The estimates do not seem to be the gist of the action. Plaintiff has by reason of such omissions failed to bring itself within the rules discussed in Hartford Accident & Indemnity Co. v. Federal Const. Co., 168 Minn. 202, 209 N. W. 911, and cases therein cited.

"Questions arise in relation to whether the right which a surety acquires by subrogation is superior to the rights of a bank acquired by actual assignment from the contractor are quite distinct from the question of a contractor's surety being liable to one who merely loans money to the contractor to be used in the work.

"The complaint seems to stand and rest upon the theory that a bank which by agreement with the contractor advances money to pay for labor and material used in the work, is subrogated to the rights of the laborers and materialmen whose claims are paid, and is entitled to recover such advances on the contractor's bond. But we have recently held to the contrary. [First National Bank of Chisholm v. O'Neil (Minn.), 223 N. W. 298, filed January 25, 1929.] The surety is not liable, for the simple reason that the terms of its bond did not obligate it to pay claims for borrowed money. Upon this theory the complaint is insufficient. The Aetna Case recognized the doctrine of the cases discussed in the Hartford Case and permitted a recovery of the fund remaining unpaid, but declined to impose a direct liability upon the surety under the language of its obligation. [The case of Finch v. Enke (S. D.), 222 N. W. 657, is not in point.]"

To like effect is Farmers State Bank v. Anderson (Minn.), 263 N. W. 443.

I do not believe that the Missouri Supreme Court, when it adopted the law announced in the Wurtz case, intended to give the doctrine of that case any wider scope than was intended by the Minnesota Supreme Court. The Minnesota courts have restricted it to cases involving instalments due or paid under construction contract, or retained percentage under the construction contract. I am, therefore, of the view that the Powell case can only stand for the proposition that where money is loaned to the contractor and is used to pay labor claims, the lender by reason of the assignment by the contractor of money due under the construction contract has an equity superior to the equity of the surety on the contractor's bond in the instalments paid under the construction contract prior to any default by the contractor, and that the lender by reason of this superior equity has a right to apply the instalment paid to the liquidation of the loan.

It follows, of course, that since Powell exercised his right to apply the money paid to him on the loan account, he stood in court as a materialman suing on the bond, and since the statute gave materialmen a right to sue on the bond, the judgment in his favor had to be affirmed.

This is entirely different from a holding that a bank, under facts such as are shown in the case at bar, has an action on a bond. The equity raised in the Powell case is not sufficient to create a cause of action on the bond.

It is manifest that the plaintiff herein has not furnished labor or materials, or any of the items specified in the statute as covered by the bond. Its claim, therefor, if sustained, must be worked out upon the theory that the rights of the laborers and materialmen, whose claims were paid out of the proceeds of the loans, have vested in it, or that, for the purpose of enforcing the claim on the bond, the bank stands in the shoes of the laborers and materialmen. In other words, the doctrine of subrogation must be invoked—the right to resort to the security and remedy which the creditors, i. e., laborers and materialmen, were capable of asserting.

If the Minnesota Supreme Court, in the Wurtz case, based the bank's superior right to the fund there in dispute upon the theory that it was subrogated to the rights of the materialmen and laborers, it extended the doctrine of subrogation to the extreme limit, and is contrary to the great weight of authority, which holds that a bank under such circumstances is a mere volunteer, and not entitled to the remedy, for the reason that the doctrine will only be applied, when the person paying the debt of another does not act voluntarily, but under some compulsion, pays a debt or discharges an obligation for which another is primarily liable, and which in equity and good conscience ought to be discharged by the latter. The general rule is that there must be some element of self-protection involved. That can only be supplied under the Wurtz and Powell cases by holding that the bank made the payments in performance of a legal duty imposed by its contract to loan money to the contractor to pay labor and material claims, which was entered into prior to entering upon the work.

It is difficult to circumscribe specifically all the situations to which the principle of subrogation may be applied, and whether it is applicable or not depends upon the particular facts and circumstances of each case as it arises. And while the broad equities should always be sought out as far as possible, it cannot be used as a universal remedy for parties who have lost their money, but must be applied according to the established rules of equity jurisprudence and with due regard to the legal and equitable rights of others.

The right of subrogation, if any, raised in the Powell case, was dependent on the contract between Powell and the contractor in the

sense that it grew out of conditions resulting from a due observance of that contract, namely, the payment of claims of laborers for which the surety was liable, and the reimbursement of the bank out of a fund in which the contractor had a proprietary interest and in reference to which he had a right to contract, which right, of course, was subordinate to the right of the materialmen and laborers to have the fund applied upon their claim. He had a right to assign his interest in the fund to Powell, which he did, and the latter applied it to the loan, the proceeds of which had been used to pay labor claims for which the surety was liable. The surety then cannot complain if the court holds this condition, arising from an observance of the agreement, created an equity superior to its equity in the fund. But the surety can complain if it is attempted to make use of those conditions to enlarge his obligations under a contract over which the parties contracting had no control.

It seems to me that this distinction is valid. It has been applied by the Supreme Court of Texas in Employers' Casualty Co. et al. v. Wolfe City et al., 119 Tex. 552, 25 S. W. (2d) 320. In that case one Bradshaw entered into a contract with the city to build a waterworks and dam, and the Employers' Casualty Company furnished the performance bond. Thereafter Bradshaw needed money with which to pay claims of laborers and materialmen, and applied to the First State Bank for money with which to pay said claims. An agreement was reached with the bank, whereby the bank agreed to lend the money and Bradshaw agreed that the bank should take the place and stand in the shoes of the laborer and materialmen claimants. Notes were also given to the bank. The court refused to allow recovery by the bank in a suit by it on the bond. The court said:

"We understand in this connection that the bank contends that the agreement between the debtor, Bradshaw, and itself, together with the other circumstances, is sufficient to work subrogation of the creditors' security in favor of the bank. We cannot sustain this contention. It is true that subrogation may accrue on an agreement between a volunteer and a debtor as held in Fievel v. Zuber, 67 Tex. 275, 3 S. W. 273, and other authorities cited by the Court of Civil Appeals. However, these authorities do not have application here, for the reason that Bradshaw had no authority to deal with the bond, which is the property, on which the lien was sought to be fixed by the transactions and agreement between him and the bank. In the case at bar, neither Bradshaw, the city, nor the bank had any authority to deal for the casualty company. At the time the bank advanced the money, it took no assignment of the lien of laborers or materialmen, and it (the bank) had no claims against the bond that it was necessary for it to protect by paying the laborers and materialmen. Such being the case, it was a pure volunteer, and is not entitled to any judgment against the bonding company. Certainly the bank

could not be subrogated to any rights of the laborers or materialmen against the bond by virtue of its agreement with Bradshaw, for the reason that Bradshaw had no authority to deal with the bond.''

The court later, in Verschoyle v. Holifield (Tex. Civ. App.), 123 S. W. (2d) 878, 883, cited and followed the above case and explained the theory of the decision in the following language:

''The court treated the bond given for the benefit of laborers and materialmen as property against which a lien was sought to be fixed in favor of the bank by virtue of the agreement between the debtor and the bank, and held that no lien could thus be given to the bank, and that the bank could not by virtue of the agreement be subrogated to the rights of the laborers and materialmen against the bond, because Bradshaw had no authority to deal with the bond, that is, no authority to create a lien against the property.''

Walker, the debtor in the case at bar, could no more create a right of subrogation in the bank to the laborers' claims on the bond in suit than could a debtor create a right to subrogation to a deed of trust on property he did not own.

In the McClure case, also relied upon by respondent, the plaintiff, a school district, had contracted with defendant, Frank P. McClure, to build for it a certain school building at a price of $35,000. Defendant, Southern Surety Company, the bondsman of the said McClure, guaranteed the faithful performance of the contract. Suit on the bond was brought by the school district, as obligee, the petition alleging that plaintiff was compelled to take over and finish the building, because of McClure's failure to fully construct and finish the same in accordance with the terms of the contract and subsequent contracts regarding alterations. In the written portion of the bond appeared the following language:

''The principal and surety in this bond covenant and agree to repay to the obligee all sums of money which the obligee may pay to other persons, in accordance with and under the terms of the contract plans and specifications, on account of work and labor done, or material furnished, which the contractor may fail to do or to furnish.''

The court held that this portion of the bond showed a clear intent to create a liability for the contractor's failure to pay for material and labor which might go into the building.

The facts further showed defendant's foreman became short of funds with which to meet the payrolls for two successive weeks, and borrowed $800 from a bank, with which to meet such payrolls, giving the bank at the time an order on plaintiff for said amount, to be taken out of the next payment to the contractor. The court held that this amount could be recovered by the school district in the suit on the bond, saying:

''The evidence tends to show that this money was used to pay for labor done upon this school building. It was gotten for that purpose,

and whilst notes were given with the order aforesaid as collateral, we are inclined to the view that this item, as well as all others sued for, was properly chargeable to the bond in suit. The money was actually paid for labor done upon the school building, and was paid to the bank, rather than the contractor under the circumstances above detailed. Had the plaintiff paid the contractor this sum for such purposes, there would be no question as to the liability of the bond. The payment, being made to the bank upon the direct order (in writing) signed by the contractor, cannot and does not change the situation. In other words, the payment of this $800 upon the written order as above mentioned was the same as if it had been paid direct to the contractor. This because it was paid upon the written order of the contractor.''

Nothing appears in the above case that would lead me to believe that the Supreme Court had intended it as an authority giving a money lender a suit on a contractor's bond under the statute. In that case, the school district, the obligee of the bond, brought suit to recover money it had paid to the bank upon written orders of the contractor. The obligation of the bond was to reimburse the obligee for such payments. The basis of recovery was that the payment to the bank under orders of the contractor was equivalent to a payment to the contractor. The right of the bank to recover under the bond was not ruled on.

Respondent here also contends that the bond is broader than the statute and includes respondent in its terms. The bond stipulates to ''pay to the proper parties all amounts due for material . . . and for all labor performed in such work whether by subcontractor or otherwise, then this obligation to be void. . . .''

The statute provides: ''. . . and such bond, among other conditions, shall be conditioned for the payment of material, . . . . consumed . . . and for all labor performed. . . .''

I think it perfectly obvious, from a reading of the bond, that the obligor undertook to pay all amounts due for material and labor to the proper parties as determined by the statute and that the proper parties are those persons furnishing same. The bank supplied no material, it did no labor, it held no assignment from any laboring man or materialman, and it was not subrogated to the claims of any laborer or materialman. It was not a party covered by the bond, either under the terms of the statute or the bond itself.

I am of the opinion that there is nothing in the case which justifies recovery by respondent, and I am of the further opinion that the trial court erred in failing and refusing to give the declaration of law in the nature of a demurrer to the evidence requested by the appellant.